No. 55.—JAMES D. HARGROVES and another, executors of Gabriel Martin, deceased, plaintiffs in error, *vs.* LOUISA FREEMAN, by her next friend, defendant in error.

[1.] Independent of the *moral obligation* of the father to support his bastard child, his statutory liability to maintain and educate it, until it arrives at the age of fourteen years, constitutes a sufficient legal consideration to enforce the payment of a promissory note given for that purpose.

Assumpsit, in Jackson Superior Court. Tried before Judge JAMES JACKSON. August Term, 1852.

Louisa A. Freeman, an infant, by her next friend, Frederick S. Freeman, brought suit against the executors of Gabriel Martin, upon a promissory note for one thousand dollars, made by the said Martin, in his lifetime. Upon the trial, it appeared that the plaintiff was the illegitimate daughter of Gabriel Martin ; that, at one time, a warrant for bastardy issued against Gabriel Martin, which, by consent of the mother of plaintiff, was dropped ; that Gabriel Martin promised the mother to provide for the child

that he paid small amounts to the mother, during his life ; and shortly before his death, delivered this note to the mother, for the benefit ot the child.

Defendants pleaded that the consideration was insufficient to sustain the promise, and requested the Court so to charge. The Court refused, and this is the first error assigned.

After the argument of counsel before the Jury commenced, defendant's counsel moved to dismiss the case, because the *prochein ami* had not filed the bond required by the rule of Court.   The Court overruled the motion, and afterwards passed an order requiring the *prochein ami* to file the bond within thirty days, and on his failure, requiring the officers of Court to retain the money, until the further order of the Court.

The overruling of this motion is assigned as error.

C. DOUGHERTY, for plaintiff in error.

T. R. R. COBB, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

On the final trial of this cause, defendant's counsel moved to dismiss the suit, on the ground that Louisa Freeman, the plaintiff, was an infant, and that Frederick S. Freeman, through whom she sued, as her next friend, had not given bond and security, as required by the rules of practice.

By the sixty-second rule of the Superior Courts, it is provided, that no *prochein ami* shall be permitted to institute any personal action in the name and behalf of an infant, until such *prochein ami* shall have entered into sufficient bond to the Governor of the State for the care of the infant, and his representatives, conditioned well and faithfully to account of and concerning his said trust; which bond may be sued by order of the Court, in the name of the Governor, and for the use of such infant; and such bond shall be filed in the office of the Clerk of the Court in which the suit may be commenced.   2 *Kelly's Rep.* 478, 485.

It will be observed, that the application to dismiss the action is made by the *defendants*, and is predicated upon the ground that it could not be legally brought until bond and security was given.    Can it be doubted that *quoad* the *defendants*, their own repeated recognition of Frederick Freeman, as ·the next friend of the infant, will estop them from making the  objection at this late stage of the proceeding ; if indeed they ever had the right, why did they not plead in abatement to the disability of the plaintiff, instead of defending the suit through several trials upon the merits ?

As the *prochein ami* is liable for costs, and may be removed, if he is treacherous to, or negligent of the interests of the infant, or is likely to waste the fund, if recovered, the Court will at any time see to it that the necessary protection is given to guard these rights and interests ; and the record shows that this has been done. But the defendants having pleaded to the action, upon its merits, and treated the next friend throughout this litigation, as the proper party recognized and sanctioned by the  Court to prosecute this claim, they shall be concluded by their own acts and admissions, from coming in at the eleventh hour and objecting that he is not the legalized next friend of the infant.

[1.] But the main error assigned is, the refusal ˙by the Court to charge the Jury, when requested to do so, by defendant's counsel, that if they believed, from the testimony, that the only consideration for the note was to provide for and support the plaintiff, who was the illegitimate child of the *maker*, that there could be no recovery thereon.

The old doctrine seems to have been, that a *moral obligation* was alone a sufficient consideration to support an *express* promise.

*Turner vs. Vaughn*, 2  *Wilson's Rep.* 339, was an action of debt, upon a bond given in consideration of cohabitation had by the defendant with the plaintiff ; he thereby agreeing to secure to the said Catharine Turner, during her natural life, the yearly sum of thirty pounds, payable on the four most usual feasts of the year ; that is to say, the birth of our Lord Christ ; the annunciation of the blessed Virgin Mary ; the nativity of

Hargrove and another *vs.* Freeman.

John the Baptist, and of St. Michael the Archangel, by even and equal portions." The declaration was demurred to, upon the ground that it was given upon an illegal and flagitious consideration; and that, therefore, the Court would not assist her to recover thereupon.

But *Clive, Bathurst and Gould,* Justices, (*absente capitali justic. Wilmot,*) without hearing the other side, awarded judgment for the plaintiff.

*Clive,* Justice, said, " I am in a Court of Law, and not in an Ecclesiastical Court; if a man has lived with a girl, and afterwards gives her a bond, it is good. Suppose this bond had been given, by the defendant, to the plaintiff, for being his mistress, it would have been good in point of law; although, in a Court of Equity, it would be postponed to creditors. Sir *Joseph Jekyll,* Master of the Rolls, in a case where creditors interfered against a bond of this sort, wished he could have given the lady the money upon the bond. And where it is *premium pudoris,* a Court of Equity will not relieve against such a bond. This condition is incapable of an explanation, to make the bond an illegal act."

*Bathurst,* Justice—" Where a man is bound in honor and conscience, God forbid that a Court of Law should say the contrary ; and wherever it appears that the man is the seducer, the bond is good. *Bracton* says, that when a man cohabits with an unmarried woman, it is *legitima concubina* ; and *Exodus chp.* 22, *v.* 16. *If a man entice a maid that is not betrothed, and lie with her, he shall surely endow her to be his wife.* See also, *Deuteronomy, chp.* 22, *v.* 28, 29—"If a man find a damsel, which is a virgin which is not betrothed, and lay hold on her, and lie with her, and they be found, then the man that lay with her, shall give unto the damsel's father fifty shekels of silver, and she shall be his wife, because he hath humbled her ; he may not put her away all his days." *Honor and conscience ought to bind every man, in point of law.*

*Gould,* Justice—" The Court may take this for a lawful and conscientious consideration ; we must presume that the defendant has done what, in honor and conscience, he ought to have

VOL. XII 44

done, and that he thought himself a wrong-doer, and gave the plaintiff this bond to make her amends."

This opinion is too pointed to require comment. It is strikingly analogous, in principle, to the one under consideration. True, this contract for past cohabitation was *sealed,* but the Judges do not put its enforcibility upon that ground; but because it was binding in *honor* and *conscience.* And while all the Courts recognize the moral obligation of the father to make provision for his illegitimate offspring; still, it is supposed by some, that this can be done by will, gift or legislative enactment *only.* A mere technical distinction like this, cannot abide long the strong moral sense of this enlightened age.

Before dismissing the case of *Turner vs. Vaughn,* I would take occasion to commend to the consideration of our law-makers, the regulation in *Exodus,* as the very best preventive against a most heinous offence.

In *Lee vs. Muggeridge,* (5 *Taunton's Rep.* 35,) it was held that a moral obligation is a good consideration for a promise to pay. Sir *James Mansfield,* Chief Justice, said—" The only question, therefore, is whether, upon this declaration, there appears a good moral obligation." *Heath,* Justice—"I am of the same opinion. Promises, without consideration, are not enforced, because they are gratuitous, and the law leaves the performance to the liberality of the makers. The notion that a promise may be supported by a moral obligation, is not modern. In *Charles the Second's* time, it was said, if there be an iota of equity, it is enough consideration for the promise." *Gibbs,* Justice—" I agree in this case ; the plaintiff is entitled to recover. It cannot, I think, be disputed now, that wherever there is a moral obligation to pay a debt or *perform a duty,* a promise to pay that debt or to perform that duty, will be supported by previous moral obligation."

When the commentator, therefore, after collating the British cases in a note to *Wennall vs. Adnay,* (3 *Bos. and Pul.* 249,) concludes that an express promise can only revive a precedent good consideration, which might have been enforced at Law, through the medium of an implied promise, had it not been

suspended by some positive rule of law, but can give no original right of action, if the obligation on which it is founded, never could have been enforced at Law, he is clearly contradicted by this case in 5 *Taunton.* For here there never was any legal obligation upon *Mary Muggeridge,* the testatrix, to pay the debt, for which her executors were sued, and her estate made liable.

*Gibbs,* Justice, in delivering his opinion, a part of which I have already quoted, remarked that the counsel for the defendant did not dare to grapple with the position, that wherever there was a moral obligation to pay a debt or perform a duty, that a promise to pay that debt or perform that duty, would be supported by the previous moral obligation. But he says they endeavored to show that there was no case, in which a promise had been supported, where there had not been an antecedent legal obligation, at some time or other, from which they wished it to be inferred, that unless there had been an antecedent legal obligation, the mere moral obligation would not be a sufficient consideration to support the promise.

But the learned Judge repudiates this proposition, and cites the case of *Barnet vs. Hedley,* (2 *Taunton,* 184,) against this position, where *Hedley* certainly never was, for a moment, legally bound to pay a farthing of the money for which he was sued.

The more modern cases do certainly sustain the doctrine that there must have been some pre-existing obligation which has become inoperative by positive law, to form a basis for an effective promise; such, for instance, as debts barred by the Statute of Limitations; debts incurred by infants, and debts of bankrupts. *Cook vs. Bradley,* 7 *Conn. Rep.* 57. *Littlefield vs. Shee,* 2 *Barn. and Adolph,* 811. *Parker vs. Carter,* 4 *Munf.* 273. *McPherson vs. Reese,* 2 *Penrose and Watts,* 521. *Pennington vs. Gettings,* 2 *Gill. and Johns.* 208. *Smith vs. Moore,* 13 *Johns. Rep.* 259. 2 *Kent's Com. 2nd ed.* 465.

The principle to be deduced from the general current of these cases, and others which might be cited, is as I have stated, namely, that for a moral obligation to constitute a sufficient con-

sideration to support an express promise, it must be founded upon an antecedent valuable consideration.

But respectable authority can be adduced on the other side, even among the later adjudications, both in England and this country.

In *Wells vs. Horton, executor of Blissett,* (2 *Car. and Payne,* 383,) the Court held the ancient rule, viz : that a moral obligation to pay, was a sufficient consideration for a promise; and *Best,* Chief Justice, in response to Sergeant *Winslow,* who contended that there was no consideration to support the special promise laid in the declaration, said—" There was plenty of consideration ; there was a *moral obligation* to pay ;" and he expressed the hope that the Judges in Westminster Hall would " always hold, that a moral obligation to pay, was a sufficient consideration for a promise to pay." See also *Seago vs. Deane,* 4 *Bing.* 459 ; and *Davis vs. Morgan,* 6 *Dowl. and Ryland,* 42.

In *Commissioners of the Canal Fund vs. Perry,* (5 *Ohio,* 56,) the Court held that a moral obligation is sufficient to support an action on an express promise.

In *Glass vs. Beach,* 5 *Vermont Rep.* 172, *Baglies,* Justice, delivering the opinion of the Court, says : "I consider that the defendant, before he made this *express* promise, was under a *moral obligation to do* what he expressly promised to do ; and this obligation, if there were no other inducements, was a sufficient consideration for the defendant's express undertaking. If the promise was only to do what an honest man ought to do, the ties of conscience upon an upright mind, are a sufficient consideration," referring to 1 *Tidd,* 379. *Cowper,* 290, *and* 4 *Vermont Rep.* 144.

It is not pretended that the consideration of the note given by the putative father of this bastard child to the mother, was not meritorious and valuable. It would seem, then, that if a promise to pay the mother a gross sum of money upon such a a consideration would be binding, an agreement to pay the child, or both the child and the mother, would be equally obligatory.

Hargroves and another *vs.* Freeman.

But that is not the ground upon which I propose to rest this opinion.

I assume this to be an incontrovertible position, that whatever doubts may exist, as to the sufficiency of a mere moral obligation, there can be none that a legal obligation is always a sufficient consideration to support a promise. By the laws of this State, the father of a bastard child is bound for its maintenance and education until it arrives at the age of fourteen years; and he is also bound for the expense of lying-in with such child, and for the boarding, nursing and maintenance of the mother, while she is confined by reason of said parturition. *New Digest,* 148.

Gabriel Martin then, being in easy, if not affluent circumstances, and having made ample provision for his immediate family, and not doubting but that Louisa, the plaintiff in this action, was his child ; and knowing, as he said, that her mother was poor and not able to keep her from want; and being unwilling, as he stated, that she should " perish a beggar in the world," draws and presents to Mrs. Freeman, two promissory notes, the one payable to herself, for $300, and the other to the child for $1,000, directing her to put the latter out at interest " to clothe and school" the girl until she arrived at age, when the *corpus* was to be given to her : promising, that if he lived, he would attend to it himself, and if he died, she could collect it; assigning as a reason for making the provision in this way, in preference to doing it by *will,* that his will might be broke; and that to give a plain note of hand, he was advised, was the best mode of effecting the purpose which he had always intended ; thus voluntarily performing what the Statute would compel him to do.

In the language of the *Vermont Court* : Is not this—I will not say " promising to do "—but actually doing "what an honest man ought to do ? " And in the language of Justice *Bathurst*—" Where a man is bound in honor and conscience," and I will add, in law, too, " God forbid that a Court of Law should say the contrary."

Such a contract, is not against good policy, or good morals,

nor against law, but in conformity with its express provisions, and in the judgment of this Court, ought to be enforced. If the defendant's testator, by this arrangement, relieved himself from all statutory, liability in which he was in imminent danger—for the child had already been sworn to him—the paternity of which he never disputed—if he was by this means acquitted from a public prosecution, exposure and disgrace—to say nothing of the trouble, loss of time, and pecuniary expense necessarily incidental to such a proceeding—who shall say that these considerations were not amply sufficient to bind him for the amount which he himself, in view, no doubt, of all these things, as well as of his natural obligations to provide for his offspring, freely and understandingly elected to pay?

The fine imposed by the Code, for bastardy, it is true, is only $700. But where the reputed father prefers to avoid a public arraignment and trial, and adjusts the matter with the mother himself, Courts will not undertake to measure the consideration, nor to circumscribe it by any definite or prescribed bounds. 5 *Dana*, 45. Is the consideration *legal*? If so, its *adequacy* is a matter for the determination of the parties themselves, and their decision once made, fairly and free from deception, is irrevocable and uncontrollable.