39022. WORTHINGTON v. WORTHINGTON et al.

BELL, Justice.

This case is before us on certiorari from a decision of the Court of Appeals. *Worthington v. Worthington,* 162 Ga. App. 813 (292 SE2d 861) (1982). In 1974 Mary Jane Moore bore an illegitimate child. She filed suit against appellant, alleging he was the father and seeking to compel him to pay child support. The complaint was eventually amended so that it was cast solely as an OCGA Ch. 19-7, Art. 3 (Code Ann. § 74-301 et seq.) (Ga. L. 1980, p. 1374) paternity suit with Moore individually and her son individually, by next friend, and by guardian ad litem as plaintiffs. In defense appellant answered that he and Moore had entered into a contract in 1974 under the terms of which he gave her $10,000 in return for her release of all support obligations he might owe her and the child. He moved for summary judgment, which was denied, and the Court of Appeals granted an interlocutory appeal.

The Court held that to the extent the mother had an individual

right to sue for child support she had waived that right, but also found that insofar as the contract purported to waive the child's right to support under OCGA § 19-7-24 (Code Ann. § 74-202)[1] it was contrary to public policy and unenforceable.

Appellant applied for a writ of certiorari, which we granted. He urges that OCGA Ch. 19-7, Art. 3 (Code Ann. § 74-301 et seq.) is a new remedy for failure to fulfill the obligation to support an illegitimate child and is not intended to be retrospective. He further argues that his contract extinguished his duty of support, and an attempt to revive that duty by retroactively applying Article 3 will unconstitutionally impair his vested contractual right. We reverse the first division of the Court of Appeals' opinion; we uphold the result of the second division, but not for the reasons the Court relied upon.

1) With respect to Division (2), we have already held in divorce cases that the right to petition for modification of child support belongs to the child, and cannot be waived by agreement between the parents. *Livsey v. Livsey,* 229 Ga. 368, 369 (191 SE2d 859) (1972); accord, *Crosby v. Crosby,* 249 Ga. 569 (292 SE2d 814) (1982); OCGA § 1-3-7 (Code Ann. § 102-106). If the problem facing us were purely one of social policy and its impact upon the enforceability of contracts, as the Court of Appeals characterizes it, we would not hesitate to find that the protection of the non-waiver doctrine should be extended to illegitimate children. See Walker v. Walker, 266 S2d 385 (Dist. Ct. App. Fla. 1972). Children, legitimate or illegitimate, are not property, and absent a clear legislative declaration otherwise their support rights may not be bartered away by their parents. H. Clark, The Law of Domestic Relations, § 5.3 (1968).[2] Contra, *Warner v. Burke,* 137

---

[1] In 1974 the section read, "The father of an illegitimate child shall be bound to maintain him until said child reaches the age of 18, marries or becomes self-supporting, whichever comes first. This obligation shall be good consideration to support a contract by him. He may voluntarily discharge this duty; if he shall fail or refuse to do it, the law will compel him. Provided, however, that the Superior Court shall have the power, upon petition of the father, to require the mother of an illegitimate child to contribute to such support upon a determination that the financial circumstances of both the father and the mother are such that justice and equity require the mother to share in, or have responsibility for, such support." Ga. L. 1972, p. 494 (Code Ann. § 74-202).

This statute was amended by Ga. L. 1979, pp. 466, 494, so that it now provides that "Until majority, it is the joint and several duty of each parent of an illegitimate child to provide for the maintenance, protection, and education of the child, except to the extent that the duty of one parent is otherwise or further defined by court order."

[2] "Where the bastardy statute is silent on the question of settlement, the courts are in disagreement as to whether the mother can make a settlement with the alleged

Ga. App. 185 (223 SE2d 234) (1976). See *Newsome v. Newsome,* 232 Ga. 49, 51 (205 SE2d 291) (1974) (Ingram, J., concurring specially). See generally 10 AmJur2d 917, Bastards, § 98; 10 CJS Bastards, §§ 40-41 (1982 Supp.). But there is also an important issue of statutory interpretation which the Court of Appeals has not addressed, *i.e.,* the possible conflict between the voluntary discharge language of the 1974 version of § 19-7-24 (Code Ann. § 74-202) and that section of Article 3 which provides, "Regardless of its terms, an agreement, other than an agreement approved by the court in accordance with this article, between an alleged or presumed father and the mother or child does not bar a petition under this Code section." OCGA § 19-7-43 (b) (Code Ann. § 74-304).

If § 19-7-24 (Code Ann. § 74-202) did not authorize contractual releases of illegitimates' support claims, then it does not conflict with § 19-7-43 (b) (Code Ann. § 74-304) and we are free both to invoke social policy and follow § 19-7-43 (b)'s (Code Ann. § 74-304) mandate, but if § 19-7-24 (Code Ann. § 74-202) did provide for such releases[3] then we are, as appellant contends, confronted with a new statute, enacted to provide an additional method of enforcing the duty of support established by a prior act, which appears to operate in a manner that impairs vested contractual rights incurred under the prior act. *Enger v. Erwin,* 245 Ga. 753 (267 SE2d 25) (1980); *Todd v. Morgan,* 215 Ga. 220 (190 SE2d 803) (1959); *Bullard v. Holman,* 184 Ga. 788 (2) (193 SE 586) (1937); *Bank of Norman Park v. Colquitt County,* 169 Ga. 534 (3) (150 SE 841) (1929). However, we need not address the retroactivity issue since as we find below § 19-7-24 (Code Ann. § 74-202) was never intended to allow parents of illegitimates to extinguish their support rights.

As it existed in 1974, OCGA § 19-7-24 (Code Ann. § 74-202) provided that "[t]his obligation shall be good consideration to support a contract by [the alleged father]. He may voluntarily discharge this duty; if he shall fail or refuse to do it, the law will compel him." This language does not expressly grant the father the right to bar further claims by his voluntary discharge, nor does it

father which will bind all parties, including the child. The father of a legitimate child is not able to compromise his support obligation in this way. In the absence of statutory authority, the alleged father of the illegitimate child should not be able to either." Clark, supra at 173.

[3] Unlike legitimate children, at common law bastard issue had no right to support from their fathers; the legislature has given them this right. Clark, supra, at 173; 10 CJS 86, Bastards, § 18 (c). Because of the result we reach today we need not consider whether such a distinction would violate equal protection guarantees.

expressly give the mother the capacity to waive the child's support rights. The social policy against such a bar is strong, and because the act lacks a clear expression on the subject we find against appellant. This is not the sole ground of our decision, however, since our conclusion is buttressed by unusually clear documentation of the statute's origins and the legislative intent behind its enactment.

OCGA § 19-7-24 (Code Ann. § 74-202) originated in the Code of 1863, § 1749.[4] Prior to that time the sole statutory expression of the putative father's duty to support was found in the old bastardy statute. Cobb's 1851 Digest, pp. 148-150 (former Code Ann. Ch. 74-3, repealed by Ga. L. 1973, p. 697). Under that statute an alleged father could be criminally prosecuted for failure to make a bond to support and educate his illegitimate child. To avoid public embarrassment the practice arose whereby the father privately agreed with the mother to pay child support either periodically or in lump sum if she would forebear from initiating bastardy proceedings. In the decade preceding the War Between the States there was, however, a serious question whether those contracts were supported by legal consideration so that they could be enforced by the mother or child against the alleged father. See 20 ALR3d 500, §§ 8-9.

This issue was brought before our Court in the case of *Hargroves v. Freeman,* 12 Ga. 342 (1852). *Hargroves* was a suit by an illegitimate child by her next friend against the executors of her putative father's estate, to enforce a promissory note he had made to avoid a bastardy proceeding. The executors defended on the ground that the consideration was insufficient to sustain the promise. On appeal the child's counsel, Thomas R. R. Cobb,[5] argued that the father's moral obligation to support his child was sufficient consideration to support the note. Justice Lumpkin, writing for the court, agreed in dictum that there was indeed a strong moral obligation but ultimately ducked that issue and bottomed his decision on the bastardy statute. He observed that the statute bound a father for the maintenance and education of his child, and a contract to discharge that obligation was thus supported by legal consideration, was not against policy, morals, or law, and was enforceable by the child.

---

[4] "The father of a bastard is bound to maintain him. This obligation shall be good consideration to support a contract by him. He may voluntarily discharge this duty; if he fails or refuses to do it the law will compel him."

[5] Cobb occupies a unique position in the development of Georgia law. He served as Supreme Court Reporter from the 1849 to 1856 terms, and was chairman of the committee which drew up the first Georgia Code, the Code of 1863. The first Justice

When the 1863 Code was compiled under Cobb's direction the *Hargroves* holding was incorporated into a new statute, § 1749.[6] That section spelled out two rules of law: first, the putative father had a legal obligation to support his child; second, he could legally contract to avoid prosecution to compel him to meet his duty, and the duty was legal consideration for the contract. The issue of whether these agreements could bar mothers or children from claiming child support over and above the contractually agreed sum formed no part of the historical context of the statute, nor the legislative intent it embodied.

We also find persuasive a comparison of § 1694 of the 1863 Code (OCGA § 19-6-8 (Code Ann. § 30-211) in its present form) to § 1749. Section 1694 allowed a husband under certain circumstances to contract to discharge his spousal support obligations, and expressly provided that such an arrangement "shall be a bar to [his wife's] right to permanent alimony." Based on this comparison, we infer that if the legislature had intended that Code of 1863 § 1749 contracts could operate to extinguish the child's support rights, it would have included similar language in that statute.

Moreover we find that by 1974 the section of the statute concerning discharge of obligations had been repealed. Section 19-7-24 (Code Ann. § 74-202), former Code Ann. Ch. 74-3, and former Code Ann. § 74-9901 have been previously held to have formed an integrated statutory scheme to compel fathers to support their bastard issue. *Tillman v. State,* 249 Ga. 792 (294 SE2d 516) (1982); *Washington v. Martin,* 75 Ga. App. 466 (43 SE2d 590) (1947). Under the scheme, Ch. 74-3 provided the mechanism to compel the father to post a bond for support and education, § 74-9901 was the sanction he faced for failure to do so, and § 19-7-24 (Code Ann. § 74-202) was specifically designed as a means by which the father could avoid the

---

Lumpkin (the *Hargroves* opinion's author) was his father-in-law. Cobb became a brigadier general in the Confederate Army and was killed at the Battle of Fredericksburg. See McDonnell, A Note on the Georgia Contracts Code, 13 Ga. L. Rev. 449 (1979).

[6] Cobb also drew on the *Hargroves* holding to form the 1863 Code's section on consideration: "Considerations are distinguished into good and valuable. A good consideration is such as is founded on natural duty and affection, or on a strong moral obligation. A valuable consideration, is founded on money, or something convertible into money, or having a value in money, except marriage, which is a valuable consideration." OCGA § 13-3-41 (Code of 1863 § 2705) (Code Ann. § 20-303). One commentator has speculated that Cobb may have intended to adopt the *Hargroves* dictum so that a moral obligation without more would be good consideration, 13 Ga. L. Rev., supra, n. 3, at 465-467, but this interpretation has been rejected, *Davis & Co. v. Morgan,* 117 Ga. 504 (43 SE 732) (1903).

embarrassment and expense of a public proceeding. See *Hargroves,* supra at 350. Code Ann. Ch. 74-3 was repealed by Ga. L. 1973, p. 697, but § 19-7-24 (Code Ann. § 74-202) and § 74-9901 were left on the books. This Court has recently held that § 74-9901 necessarily fell when Ch. 74-3 was repealed, *Tillman,* supra; accord, *Dunagan v. State,* 163 Ga. App. 414 (294 SE2d 633) (1982), and we now find likewise with respect to § 19-7-24 (Code Ann. § 74-202) to the extent it may have allowed the father to end his obligations and the mother to waive her child's rights. We find additional evidence for this conclusion in the fact that the General Assembly deleted any reference to contracts when it rewrote the statute in 1979. Ga. L. 1979, p. 466. But see *Fender v. Fender,* 249 Ga. 765, 767 (294 SE2d 472) (1982).

For the reasons stated above, we hold that § 19-7-24 (Code Ann. § 74-202) as it stood in 1974 did not authorize the mother of an illegitimate infant to waive the infant's right to support, and conclude that where in connection with an illegitimate child's birth the mother and putative father enter into an agreement which by its terms waives the right to seek additional child support, and the contract is fully executed by the alleged father, the contract is nevertheless not effective for that purpose. In so ruling we expressly overrule *Warner v. Burke,* 137 Ga. App. 185, supra.

2) Division (1) of the Court of Appeals' opinion holds "that unless the plaintiff mother succeeds in having this settlement agreement held invalid for some other reason, full execution of it by the defendant by payment of the lump sum settlement bars any further claims which she may have against him." 162 Ga. App. 813, supra, at 814. This holding is over broad since the complaint in this case is limited to an OCGA Ch. 19-7, Art. 3 (Code Ann. § 74-301 et seq.) paternity claim and the effect the contract might have on other claims for support is not in issue. However, it should be noted that it is problematic whether any other civil actions for support would be available to mother or child. *Thorpe v. Collins,* 245 Ga. 77 (2), 80 (263 SE2d 115) (1980). But see *Poulos v. McMahan,* 250 Ga. 354 (2) (d) (297 SE2d 451) (1983); *Cummings v. Carter,* 155 Ga. App. 688 (272 SE2d 552) (1980); *Warner v. Burke,* 137 Ga. App. 185, supra. Contra, *Simmons v. Chambliss,* 128 Ga. App. 218 (196 SE2d 183) (1973). In any event we have held today that an illegitimate child cannot be barred from bringing an Article 3 paternity suit, and because the natural mother should be made a party to such a suit, OCGA § 19-7-44 (b) (Code Ann. § 74-305), we hold that notwithstanding a private contract to the contrary the natural mother is prevented neither from initiating, OCGA § 19-7-43 (a) (2), (b) (Code Ann. § 74-304), nor from participating as a party in an Article 3 action.

*Judgment reversed as to Division (1); judgment affirmed as to Divisions (2) and (3). All the Justices concur, except Gregory, J., not participating.*

DECIDED MARCH 17, 1983.

*J. Corbett Peek, Jr., James Garland Peek,* for appellant.
*Nickerson & Gaulden, Thomas Henry Nickerson,* for appellees.