IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

BETTY BERRYHILL,

      Petitioner\Appellant,

vs.

Shelby Juvenile No. G8355
Appeal No. 02A01-9701-JV-00011

CHARLES THOMAS RHODES,

      Respondent\Appellee.

FILED

October 14, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

CONCURRENCE IN PART, DISSENT IN PART

HOLLY KIRBY LILLARD, J.

I write separately to concur in part with the majority's Opinion, and to dissent in part.

I concur with the majority's decision to vacate the judgment of the juvenile court and its decision to remand the case for a determination of the appropriate amount of attorney's fee owed to the appellant. I also concur with the majority's conclusion that, under the facts of this case, the trial court was justified in finding that it would be unjust and inappropriate to apply the guidelines retroactively. Consequently, I believe it is unnecessary to reach the issue of whether a contract existed between the parties. However, insofar, as the majority relies on the existence of an implied contract between the parties, I dissent from the determination that such a contract existed throughout the entire time in which the appellant was receiving payments by the appellee.

For the reasons set forth below, I would hold that the contractual arrangement between the parties ceased to exist at the point at which Ms. Berryhill sought more money from Dr. Rhodes, and he responded by telling Ms. Berryhill that she should take him to court if she wanted more money. In addition, I would discuss whether, for public policy reasons, such an agreement

should be enforced.

The person relying on the contract carries the burden of proving the existence of the contract. ***Randolph v. Randolph,*** 937 S.W.2d 815, 821 (Tenn. 1996). In this case, Dr. Rhodes carries the burden of proving that an agreement existed between the two parties.

It has long been established that "a contract must result from a meeting of the minds of the parties in mutual assent to the terms." ***Sweeten v. Trade Envelopes, Inc.,*** 938 S.W.2d 383, 386 (Tenn. 1996) (citations omitted). Sufficient consideration and definiteness are imperative. ***Forest***

*Inc. of Knoxville, v. Guaranty Mortgage Co.,* 534 S.W.2d 853, 858 (Tenn. App. 1975); *Price v. Mercury Supply Co. Inc.,* 682 S.W.2d 924, 933 (Tenn. App. 1984).

The record indicates that Dr. Rhodes was embarrassed by the scandal of having an illegitimate child by Ms. Berryhill and paid Ms. Berryhill, at least in part, to avoid public disclosure. Ms. Berryhill accepted the amounts paid by Dr. Rhodes, implicitly agreeing to forego legal action against Dr. Rhodes for child support. During this period, there is sufficient evidence for the trial court to conclude that a contract existed between the parties, and I agree with the majority's conclusion as to this time period.

However, Ms. Berryhill testified that, at some point, she began requesting repeatedly that Dr. Rhodes increase the amount of child support. Ms. Berryhill testified about Dr. Rhodes' response to her repeated requests:

Q: And what was his response to all of these requests?

A: Generally, he would say that his practice was not going as great as it should be going and he had other expenses, and finally he said he wasn't giving me another cent. Take him to court if I wanted to.

Dr. Rhodes acknowledged that Ms. Berryhill had requested that he increase the amount of child support and that he "simply was not making that kind of money." He did not dispute Ms. Berryhill's testimony that he eventually told her that if she wanted an increased amount of child support, she should "take him to court."

At this point, I would find that any earlier agreement between the parties no longer existed. Up to that time, the tacit understanding between the parties was that Ms. Berryhill would forego legal action and public disclosure in return for Dr. Rhodes' monthly payments. Ms. Berryhill testified that Dr. Rhodes then told her that if she wanted more money, she should

3

file a legal action. It should be noted that Dr. Rhodes did <u>not</u> tell her that, if she instituted legal proceedings, he would stop making monthly payments; rather he indicated that if she wanted an <u>increase</u>, she should take legal action. At this point, the parties no longer had an understanding that Ms. Berryhill was accepting the monthly child support payments in exchange for her agreement to forego legal proceedings.   At this point, no "mutual assent" existed and the terms of the alleged contract were too vague to constitute a contract.  ***Sweeten,*** 938 S.W.2d at 386; ***Forest Inc.,*** 534 S.W.2d at 858; ***Price,*** 682 S.W.2d at 933.  Dr. Rhodes failed to carry the burden of proving the existence of a contract from this point forward.  ***See Randolph,*** 937 S.W.2d at 821.  Therefore, I would hold that no contract existed from the date on which Ms. Berryhill sought an increase in the amount of child support and was told by Dr. Rhodes to "take him to court."

It should also be noted that, for public policy reasons, there may be some question as to the enforceability of an agreement by the minor child's mother to accept less than the required amount of child support in exchange for her forbearance of legal proceedings against the putative father.  Courts in numerous other jurisdictions have held that "a contract between the mother and putative father of an illegitimate child cannot without judicial scrutiny and approval preclude future filiation proceedings for purposes of child support."  ***Fox v. Hohenshelt***, 528 P.2d 1376, 1381 (Or. App. 1974).  These courts have generally held that the child's support rights "may not be bartered away by their parents," ***Worthington v. Worthington***, 301 S.E.2d 44, 46 (Ga. 1983), and any such agreement would be deemed void as a matter of public policy.  ***Arsenault v. Carrier***, 390 A.2d 1048, 1054 (Me. 1978) (Dufresne, J., concurring).  ***See also Gammon v. Cobb,*** 335 So.2d 261, 266-67 (Fla. 1976); ***Paul M. v. Teresa M.,*** 818 S.W.2d 594, 595 (Ark. Ct.

4

App. 1991); *Mayfield v. Commonwealth,* 546 S.W.2d 433, 433-34 (Ky. 1976); *Worthington v. Worthington,* 301 S.E.2d 44, 46 (Ga. 1983); *Shelby J. S. v. George L. H.,* 381 S.E.2d 269, 271 (W.Va. 1989); *K. S. v. R. S.,* 669 N.E.2d 399, 405-06 (Ind. 1996); *Tuer v. Niedoliwka*, 285 N.W.2d 424, 426 (Mich. App. 1979).

It has been noted that the mother may be given statutory authority to bind the child in such an agreement with the putative father.  *Tuer,* 285 N.W.2d at 426 ("[a]uthorization by statute is necessary to give the mother power to bind the child.").  The majority rightly observes that the applicable Tennessee statutes regarding child support refer to an agreement between the mother and father regarding child support:

> [N]othing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to support and maintenance of a party or as to child support.

Tenn. Code Ann. § 36-5-101(h).[1]  It should be noted that this language states only that the statute shall not be construed to "prevent" an agreement and refers to the incorporation of such an agreement in a decree, implying judicial approval of the agreement, as with a marital dissolution agreement.

---

[1]Virginia appears to be the only other state that has enacted such a clause.  Research revealed no reported cases in Virginia addressing this issue.

Tennessee case law on this issue under prior Tennessee statutes is unclear. In *Reynolds v. Richardson,* 462 S.W.2d 233 (Tenn. App. 1970), the father of an illegitimate child paid the mother $500 in exchange for the dismissal of her suit to establish paternity and receive child support. At this time, the statute in effect was Tennessee Code Annotated § 36-223.[2] The court held that "[t]his statutory duty inures to the benefit of the child and we do not conceive that the dismissal by the mother of the original warrant could be considered as foreclosing the right to later assert the father's duty to furnish necessary support." *Reynolds,* 462 S.W.2d at 237.

The *Reynolds* court remanded the case. It was considered again on appeal a year later in *Reynolds v. Richardson,* 483 S.W.2d 747 (Tenn. App. 1971) ("*Reynolds II*"). In this case, the father of the child asserted that the contract was validated by Tennessee Code Annotated § 24-706. This statute provided that "[a]ll receipts, releases, and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties thereto." Tenn. Code Ann. § 24-706 (1955). The Court acknowledged that "[t]here is a distinction to be made between the act of a mother as an estoppel to a suit by her for her own benefit and a suit brought in the name of and for the benefit of the child." *Reynolds II,* 483

---

[2]This statute provided as follows:
> The father of a child born out of wedlock is liable for the necessary support and education of the child. He is also liable for the child's funeral expenses. He is liable to pay for the expenses of the mother's confinement and recovery, and is also liable to pay such expenses, including counsel fees, in connection with her pregnancy as the court in its discretion may deem proper.

Tenn. Code Ann. § 36-223 (1955).

S.W.2d at 751. The Court stated that "[s]uch an agreement could not discharge the rights of the child as between the accused father and the child." *Id.* at 752. The Court then enforced the contract to the extent that it barred a suit for the benefit of the mother, independent from the interest of the child. *Id.*

However, *Reynolds II* was partially overruled by the Tennessee Supreme Court in *Pickett v. Brown,* 638 S.W.2d 369 (Tenn. 1982). In *Pickett*, the Court considered the constitutionality of the statute of limitations in paternity actions. It noted that *Reynolds II* held that a proceeding for the

benefit of the child was "unaffected" by a release executed by the mother. The *Pickett* court then

stated:

> To the extent to which the *Reynolds* opinion appears to hold that no action or
> decision made by the mother can be allowed to bind the child, it is overruled.

638 S.W.2d at 377.[3] A broad reading of this language in *Pickett* would appear to be contrary to

the law in most other jurisdictions, as noted above. ***See cases cited above; See also*** 14 C.J.S.

*Children Out-of-Wedlock* § 44 (1991); R.W. Gascoyne, Annotation, *Validity and Construction of*

*Putative Father's Promise to Support or Provide for Illegitimate Child,* 20 A.L.R.3d 500 (1968).

In short, Tennessee law on whether an agreement between the mother of an illegitimate

child and the putative father regarding child support is enforceable, absent court approval, is

unclear and should be addressed.

In sum, I concur with the majority's decision to vacate the trial court's judgment and its

decision to remand the case for a determination of the appellant's attorney's fees. I also concur

with the majority's conclusion that, under the facts of this case, it would be unjust and

inappropriate to apply the guidelines retroactively. As a result, I believe it is unnecessary to

reach the issue of whether a contract existed. However, insofar as the majority opinion relies on

the existence of an implied contract between the parties, I dissent from the majority's opinion

that a contract existed throughout the minority of the child. I would hold that no contract existed

from the point at which Dr. Rhodes told Ms. Berryhill to "take him to court" if she wanted an

increase in child support. As to the time period prior to this date, during which the parties had an

---

[3] The United States Supreme Court subsequently reversed *Pickett* on constitutional grounds. *Pickett v. Brown*, 462 U.S.1, at 1, 103 S. Ct. 2199, at 2199, 76 L. Ed. 2d 372, at 372 (1983) ("The 2-year limitations period in paternity actions denies certain illegititimate children equal protection of the law as guaranteed by the Fourteenth Amendment.").

agreement, I would consider whether such an agreement is enforceable in accordance with the public policy of Tennessee, absent judicial approval of the agreement.

_____
HOLLY KIRBY LILLARD, J.