IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 17, 2001 Session

## KIMBERLY BEARD DAY v. JOHN ARTHUR DAY

**Appeal from the Chancery Court for Williamson County**
**No. II-25948      Russ Heldman, Chancellor**

**No. M2001-01624-COA-R9-CV - Filed January 4, 2002**

This is a post-divorce case. It is before the Court on the application of John Arthur Day ("Husband") seeking relief from the interlocutory order of the trial court denying his motion for summary judgment. Husband's summary judgment motion was filed in response to the Tenn. R. Civ. P. 60.02(1) motion filed by his former wife, Kimberly Beard Day ("Wife"), in which she seeks relief from portions of the parties' judgment of divorce (sometimes referred to herein as "the judgment"), specifically the child support, division of property, and alimony provisions of the incorporated marital dissolution agreement. Husband's application to this Court was originally filed pursuant to Tenn. R. App. P. 10. Before his application was acted upon, he converted it to a request for relief pursuant to Tenn. R. App. P. 9. This change in approach followed the trial court's reversal of its earlier order denying him Rule 9 relief. We granted Husband's Rule 9 application. We find that the material facts are not in dispute and that those facts establish that Husband is entitled to a judgment as a matter of law. Accordingly, we (1) reverse the trial court's order of April 24, 2001, denying Husband's motion for summary judgment and (2) dismiss Wife's Rule 60.02(1) motion.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Judgment of the Chancery Court**
**Reversed; Rule 60.02(1) Motion Dismissed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

James G. Martin, III, and Gregory D. Smith, Nashville, Tennessee, for the appellant, John Arthur Day.

Stevan L. Black and Vickie Hardy Jones, Memphis, Tennessee, for the appellee, Kimberly Beard Day.

**OPINION**

I.

The parties were divorced by judgment of absolute divorce entered April 20, 1999. The judgment incorporates their detailed 14-page marital dissolution agreement ("the MDA"). The MDA contains the notarized signatures of Wife (on March 8, 1999) and Husband (on March 10, 1999). It was filed with the trial court on April 20, 1999, the date on which the parties' judgment was entered. Both parties were represented by counsel. Among many other provisions, there is a provision in the MDA providing for the joint custody of the parties' two minor children, ages four and seven at the time of the divorce. Wife was designated as the children's primary physical custodian.

The judgment of absolute divorce was signed by Chancellor Russ Heldman on April 20, 1999. Among other things, the judgment recites

> that the amount of child support agreed upon between the parties conforms to the child support award guidelines established by the Department of Human Services pursuant to Tennessee Public Chapter 206, Acts of 1989.

## II.

On April 17, 2000, three days shy of the one-year anniversary of the entry of the parties' judgment, Wife filed a motion styled "Motion for Relief from Judgment." In her motion, she avers that the MDA and the judgment "contain provisions [that] are based on the mistake or inadvertence of the parties or the excusable neglect of her attorney." She seeks relief from the judgment (1) "for adequate and sufficient support for the parties' children consistent with the Tennessee Child Support Guidelines"; (2) "to provide for an equitable division of the parties' marital assets, taking into account the proper identification, classification, and valuation of said assets"; and (3) "to provide for an award of alimony consistent with the law of this state." She also seeks general relief "as the justice of this cause may require."

Wife's motion identifies a number of alleged "mistakes" in the MDA:

> 1. The first ground of the motion correctly quotes the MDA as providing that "[i]t is the intent of the parties...to divide the[ir] property...in an equitable fashion, with [Wife] to receive marital property of slightly greater value than [Husband]." The motion's first ground for relief alleges, in general terms, that the division was not equitable and that she did not receive property of "slightly greater value" than that awarded to Husband.
>
> 2. The MDA refers to Wife's separate property interest in "accounts." The document goes on to state that these accounts were worth "approximately" $60,000 at the time of the parties' marriage. According to Wife, the value of the accounts was actually $50,758.26, "one day after [their] marriage."

-2-

3.    According to the MDA, Husband's pension fund was "approximately" $185,000 "as of December 31, 1997." Wife complains in her motion that the MDA fails to take into account any increase in the pension fund's value from December 31, 1997, to the date of its execution.

4.    Wife alleges that the MDA "fails to take into account" a fee and expense award of approximately $950,000 granted to Husband's law firm in a class action suit. It is alleged that the fee was approved by the court in which the action was pending three days after the entry of the parties' judgment.

5.    According to Wife, the MDA fails to mention a receivable of $45,000 owed to the parties as a result of a loan Husband made to his firm on February 16, 1999.

6.    The motion charges that the formula adopted by the parties in the MDA to differentiate between the separate property component of Husband's IRA and the marital property part of that asset is a misstatement of the law and resulted in Wife being deprived of her fair share of the marital property component of the IRA.

7.    It is alleged that the MDA fails to recognize Wife's separate property interest in $16,000 of household furnishings purchased with her inherited funds.

8.    Wife charges that Husband's interest in his law firm was incorrectly valued at $22,500. She claims that this value fails to include the "cash assets" of the firm, "nor was it based on any actual appraisal of the assets of the law firm."

9.    It is charged that the MDA improperly values Husband's interest in a company named Daybreak Communications.

10.   According to the motion, the household property alluded to in the MDA and awarded to Wife fails to take into account the furnishings in Husband's possession. Furthermore, the dollar amount assigned to the furnishings awarded to Wife – according to her – is substantially overvalued.

11.   The MDA "utilize[s] an improper method of valuation in determining the value of"Annapura Records, a limited liability company awarded to Wife.

12.  Wife claims that the child support awarded to her "does not conform to the guidelines established by the Department of Human Services."

13.  The motion alleges that the "amount of alimony is grossly inadequate taking into account the factors set forth in [T.C.A.] § 36-5-101."

14.  According to Wife's motion, the MDA "assumes" that each of the parties "would receive $200,000 from the sale of the marital residence."  Wife alleges that she received only $134,534.02.

III.

Wife filed her personal affidavit along with the affidavits of R. Paul Cross, a personal property appraiser, and Richard Blount, a certified public accountant.  These affidavits arguably make out many of the "mistakes" alleged in Wife's motion.  Husband countered with a motion for judgment on the pleadings supported by his affidavit.  His affidavit sets forth in some detail the steps taken by him, pre-MDA, to furnish Wife with documents and information regarding the parties' financial position, including detailed information regarding the class action litigation that generated the fee and expense award mentioned in her motion.

Husband's motion for judgment on the pleadings came on for final argument before the trial court on April 3, 2001.  Following that hearing, the trial court concluded

> that under the majority opinion in **Berryhill v. Rhodes**[,] [21 S.W.3d 188 (Tenn. 2000)], there is a genuine issue of material fact concerning whether the child support agreement incorporated into the final decree of divorce violates public policy even though neither party appears to have intended to circumvent the obligations set forth in the Tennessee Child Support Guidelines.

The trial court – apparently in an attempt to justify its decision to deny Husband's motion with respect to the issues of alimony and division of property – opined that "the agreement concerning child support [is] inextricably intertwined with the parties' agreements concerning an equitable division of marital property and alimony."

-4-

An order was entered by the trial court on April 24, 2001, denying Husband's motion for summary judgment.[1] We subsequently granted Husband's request for a discretionary appeal and stayed all proceedings below, including further discovery.

IV.

Tenn. R. Civ. P. 60.02 provides, in pertinent part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect;....

A motion for relief pursuant to Rule 60.02 addresses itself to the sound discretion of the trial court, and our scope of review is limited to a determination of whether that discretion was abused. *Underwood v. Zurich Ins. Co.,* 854 S.W.2d 94, 97 (Tenn. 1993). The burden is on the party seeking relief pursuant to Rule 60.02 "to show that he [or she] is entitled to relief." *Steioff v. Steioff,* 833 S.W.2d 94, 97 (Tenn. Ct. App. 1992).

Rule 60.02 is not "a mechanism for use by a party who is merely dissatisfied with the result of a particular case." *Toney v. Mueller Co.,* 810 S.W.2d 145, 146 (Tenn. 1991).

The rule "acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.,* 798 S.W.2d 235, 238 (Tenn. 1990). "Because of the importance of this 'principle of finality,' the 'escape valve' should not be easily opened." *Toney,* 810 S.W.2d at 146.

A mistake of law is not a basis for Rule 60.02 relief. *Spruce v. Spruce,* 2 S.W.3d 192, 195 (Tenn. Ct. App. 1998). As the Supreme Court has noted, "[i]f this Court were to hold that ignorance of the law is a proper ground for relief under [Tenn. R. Civ. P. 60.02], it is hard to conceive how any judgment could be safe from assault on that ground." *Food Lion, Inc. v. Washington County Beer Bd.,* 700 S.W.2d 893, 896 (Tenn. 1985).

A party proceeding under Rule 60.02(1) – "mistake, inadvertence, surprise or excusable neglect" – must demonstrate facts explaining why he or she was justified in failing to avoid mistake, inadvertence, surprise or neglect. *Travis v. City of Murfreesboro*, 686 S.W.2d 68, 69 (Tenn. 1985).

---

[1] The trial court correctly treated Husband's motion for judgment on the pleadings as one filed pursuant to Tenn. R. Civ. P. 56 since the court considered matters outside the pleadings. *See* Tenn. R. Civ. P. 12.03.

V.

At the outset, it is important to note what this case is *not* about. There is no allegation – and not a scintilla of proof before us – of fraud on the part of Husband. The remarks of Wife's counsel at a hearing on January 3, 2001, clearly delineate Wife's position with respect to this:

> Your Honor, we have painstakingly shown to the Court multiple mistakes, inadvertence, not rising to the level of fraud by any means. I will repeat again as I have before, we are not alleging that Mr. Day has committed fraud. In fact, I don't deny that it appeared that they tried to spoon-feed Robert Jackson [Wife's former attorney who negotiated the MDA] with information and he just ignored it. But the fact is that mistakes were made clearly in reviewing the marital dissolution agreement.

Additional remarks by Wife's counsel at the January 3, 2001, hearing as well as at an earlier hearing on October 23, 2000, reflect the relationship between Wife's position with respect to mistake and excusable neglect in the instant case and a legal malpractice action that she has filed against her former attorney:

> MR. BLACK [counsel for Wife]: I would say this, Your Honor, that as far as excusable neglect is concerned, that with the perspective of my client, her attorney – we don't know until we ask Mr. Jackson why he ignored a lot of the information that was provided to him. Again, we don't have to establish fraud. It was either intentional neglect by Mr. Jackson or excusable neglect. We don't know yet. This matter has to proceed further. The discovery has to be completed. Clearly, it would be neglect to ignore proper valuation procedures, to ignore the fact that there was a $950,000 fee waiting to be approved and, in fact, was approved within days after the divorce decree was entered.

> \* \* \*

> MR. BLACK: Yes, Your Honor, they are. We have filed extensive affidavits in this case.

> Now, the question here is: Are the Rule 60 standards met? I don't question that in order for us to proceed with discovery that we must make a prima facie case that we have a legitimate Rule 60 claim. Rule 60 doesn't require fraud. We didn't have evidence of fraud. Mr. Smith [counsel for Husband] was correct in making the statement that it appeared that they went to some lengths during the course of the divorce to provide Ms. Day's counsel with information that would

-6-

equip him to make a decision as to what would constitute an equitable division of the marital estate.

If Your Honor determines that her counsel's errors are not sufficient basis for Rule 60 relief, then perhaps we can include that in the order. We filed this Rule 60 motion in an effort to mitigate her damages. Indeed, she has a complaint of legal malpractice against her attorney, Mr. Robert Jackson, which is also pending in this court. I thought it was incumbent on us to seek the Court's intervention pursuant to Rule 60 in an effort to mitigate her damages, that is to lessen the amount. Who should bear this financial loss, her husband or Mr. Jackson? And Your Honor may determine Mr. Jackson because his advice fell below the standard of care, should bear the loss. That is a decision that's well down the road.

## VI.

### A.

The trial court found that the parties' agreement as it relates to Husband's general child support obligation to Wife, as expressed in the MDA, is a "private agreement" as that concept was addressed by the Supreme Court in the case of ***Berryhill v. Rhodes***, 21 S.W.3d 188 (Tenn. 2000). Finding that there was a genuine issue of material fact as to whether the child support provisions in the MDA in the instant case violate public policy, the trial court held that ***Berryhill*** permits Wife, by way of a Rule 60.02(1) motion, to challenge the validity of the MDA's provision regarding Husband's child support obligation.

In ***Berryhill***, the Supreme Court examined a paternity case that was filed approximately one month after the child at issue had attained her majority. ***Id***. at 189. In defending the plaintiff's suit for support covering the period from the child's birth through the period of her minority, the putative father alleged and proved that the parties had agreed to specified amounts of child support following the birth of the child and that he had paid in full the amounts agreed to by them from time to time during the child's minority. ***Id***. The juvenile court held that "the defendant's payment of support as agreed to by the parties has satisfied his obligations under the law." ***Id***. at 190. On appeal, the Court of Appeals held that the lower court did not comply with the Child Support Guidelines and remanded the case to that court. ***Id***. On appeal to the Supreme Court, Ms. Berryhill contended "that both the Court of Appeals and the juvenile court erred in finding that the parent of a child to whom child support is owed may enter into a private agreement to accept child support less than that required to be paid under the Child Support Guidelines and [T.C.A.] § 36-5-101 (1995)." ***Id.***

The Supreme Court remanded the case after concluding "that private agreements for the payment of child support violate public policy." ***Id***. at 194. On remand, the lower court was directed to hold a hearing to determine the amount, if any, that was due under the proof adduced at the hearing, pursuant to the Child Support Guidelines. ***Id.*** While clearly holding that such "private

-7-

agreements" are contrary to public policy, the Supreme Court stated that the defendant would be entitled to a credit for payments made to the plaintiff during the child's minority. **Id.**

We find nothing in **Berryhill** to support the trial court's conclusion[2] that Wife can attack the validity of the MDA's child support provisions by way of a Rule 60.02(1) motion. **Berryhill** is very different from the factual scenario before the trial court and now before us. **Berryhill** is a direct appeal from the judgments of the lower courts. In the instant case, Wife has mounted a collateral attack by way of a Rule 60.02(1) motion on an unappealed-from final judgment that incorporates and approves a marital dissolution agreement. Furthermore, **Berryhill** is limited by its language to "private agreements," which the Supreme Court defined as "an agreement entered into by the parties *without court approval*." **Id**. at 190, n.4. (Emphasis added). In the case at bar, we are dealing with a marital dissolution agreement that was approved by the trial court. In the course of approving the MDA, the trial court recited the following:

> the parties, by written agreement, have made adequate and sufficient provision for the equitable settlement of property rights between themselves and have made adequate and sufficient provision for custody and maintenance of the parties' minor children; that the Marital Dissolution Agreement should be approved;....

The holding in **Berryhill** is simply not implicated by the facts of the instant case.

The crucial question in this case is whether the following child support provision in the MDA can be collaterally attacked by way of a Rule 60.02(1) motion:

> Based on his estimated annual income of approximately $700,000 per year, Mr. Day shall pay child support to Mrs. Day for the benefit of the children in the amount of $4,000.00 per month. The parties acknowledge that Mr. Day currently takes a gross draw from Branham & Day in the amount of $8,000 per month, but that on occasion he earns bonuses based on his contribution to the profitability of the corporation that increase his income to at least $10,000 per month net when averaged over a year.

We note that this provision was before the trial court when it determined that Wife was entitled to a divorce on the ground of irreconcilable differences. In this connection, as previously recited, the judgment recites the following:

> It is further ORDERED, ADJUDGED AND DECREED that the amount of child support agreed upon between the parties conforms to

---

[2]The plaintiff's Rule 60.02(1) motion does not allege, expressly or by implication, that the parties entered into a **Berryhill** type of private agreement. The trial court apparently raised **Berryhill** *sua sponte*.

the child support award guidelines established by the Department of Human Services pursuant to Tennessee Public Chapter 206, Acts of 1989.

We believe this case is controlled by our decision in the case of **Spruce v. Spruce**, 2 S.W.3d 192 (Tenn. Ct. App. 1998). In rebuffing a mother's attempt to challenge the child support provisions of her judgment of absolute divorce, we opined as follows:

> Cutting through the verbiage of Mother's filings, including her brief, we conclude that the basic thrust of her position is that the trial court, in setting child support in the divorce judgment, deviated downward from the amount mandated by the Guidelines, and that it did so without a proper basis for such a deviation....
>
> In this case, neither party claims ignorance of the operative facts. On the contrary, it is clear that each of the parties gave their consent to the child support agreement *based upon existing facts then known to both of them*. This is not a case involving a mutual, or even a unilateral, mistake of fact. What Mother is really complaining about is the fact that the law was improperly applied to the known facts – first by the parties in reaching their agreement, and then by the court in approving it. Even if true, this is a mistake of *law* and not a mistake of *fact*. A mistake of law "occurs when a party knows the facts of the case but is ignorant of the legal consequences." **Haas v. Haas**, C/A No. 02A01-9709-CV-00241, 1998 WL 599529, *4 (Tenn. App. W.S., filed September 11, 1998).

**Id.** at 194-95 (emphasis in original). In the instant case, Wife does not allege that she was ignorant of the operative facts with respect to the issue of child support; nor does she allege that she was misled by Husband with respect to his income. Just as in **Spruce**, she alleges, in so many words, that the law was not properly applied to the known facts. Thus, if a mistake was made, it was one of law; she cannot reach such a mistake by way of a Rule 60.02(1) motion. It follows that Husband is entitled to summary judgment on the issue of child support.

B.

The trial court did not expressly find a separate basis for reopening the issues of division of property and alimony. It permitted Wife's Rule 60.02(1) motion as to these matters to go forward because it found that these issues were "inextricably intertwined" with the child support provisions of the MDA.

As to the issues of property division and alimony, Wife also contends that there are a number of "mistakes" in the MDA. We have previously listed these alleged "mistakes" in this opinion. Assuming, without deciding, that Wife was mistaken in the particulars outlined in her motion, none

of these mistakes can be traced to inappropriate conduct on the part of Husband. In addition, there is nothing in the record to support her contention that the subject mistakes were those "of the parties," *i.e.*, both of the parties. Furthermore, there is nothing before us demonstrating that Wife could not have ascertained what she alleges are the true facts simply by pursuing diligent discovery.[3] On the contrary, there is substantial evidence in the record that all of the "mistakes" alleged by Wife could have been rectified by discovery permitted under the Rules of Civil Procedure. She argues that she relied on her attorney to her detriment; maybe so, but such is not a basis for Rule 60.02(1) relief. Certainly, this does not amount to a showing that she was justified in failing to avoid these "mistakes." *See* **Travis**, 686 S.W.2d at 69. *See also* **Holiday v. Shoney's South, Inc**., 42 S.W.3d 90, 94 (Tenn. Ct. App. 2000), *perm. app. denied* February 20, 2001 ("It is well settled that ignorance of an attorney with respect to the applicable law or rules is not the type of mistake that invokes the relief provided for under Rule 60.02(1)."); **Food Lion, Inc. v. Washington County Beer Bd.**, 700 S.W.2d 893, 896 (Tenn. 1985). We also find no evidence in the record of "excusable neglect"; carelessness does not constitute such neglect. **Food Lion,** 700 S.W.2d at 896. Husband is entitled to summary judgment as to the remaining allegations of Wife's Rule 60.02(1) motion.

VII.

The order of the trial court entered April 24, 2001, denying Husband's motion for summary judgment is hereby reversed; Husband is hereby granted summary judgment as to the allegations of Wife's Rule 60.02(1) motion and that motion is dismissed at her costs. Costs on appeal are taxed to the appellee, Kimberly Beard Day.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[3] We were advised at oral argument that the divorce case had not been set for trial at the time the MDA was executed.