IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 23, 2002 Session

## STACY MOLTER TURNEY v. RONALD ROSS TURNEY

**Direct Appeal from the Chancery Court for Madison County**
**No. 55204     Joe C. Morris, Chancellor**

_____

**No. W2001-00492-COA-R3-CV - Filed February 15, 2002**

_____

This appeal from a divorce decree raises issues concerning the classification and distribution of the parties' property, and the determination of income for the purposes of setting child support. We modify the distribution of property and remand for determination of child support.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as modified; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

Michael B. McWherter, Jackson, Tennessee, for the appellant, Stacy Molter Turney.

C. Timothy Crocker and Michael A. Carter, Milan, Tennessee, for the appellee, Ronald Ross Turney.

**OPINION**

The parties were married on December 24, 1987, and have one minor child. Wife is 38 years old, does not have a college degree, and has not worked outside the home since 1990 or 1991. Husband is 45 years old, has a college degree, and has a successful career as a pharmaceutical sales representative for Phizer, Inc.

Parties filed for divorce in September of 1998. The marital residence in Tennessee was sold and the proceeds divided equally, with Husband and Wife both receiving $12,800. The parties moved to Ohio, where Wife bought a home with the financial assistance of Husband. Husband paid one-half of the down-payment and closing costs on the home, contributing $4,602.33, and subsequently received partial reimbursement of this amount from Wife. The Ohio home was valued as having an equity value of $9,097.95, and was retained by Wife by agreement of the parties. The trial court classified this property as marital property.

When the parties separated, they each retained the vehicles they were driving at the time. Wife kept a 1991 GMC van valued at $5,500, and Husband retained a 1968 Datsun valued at $2,000.

Wife subsequently traded-in the van for a 1993 Saturn, purchased for a total of $6,500 (trade-in plus $1,000), and valued by the court at $6,000. The additional $1,000 was contributed by Wife's mother. Although not specifically stated as such in the final decree, the court below appears to have classified Wife's Saturn as marital property.

The parties' personal property was divided between them. The court classified some financial accounts as Husband's separate property, and divided marital accounts equally between the parties.[1] The court found that the division of marital property resulted in Wife receiving $32,436.66 more than Husband, and accordingly awarded Husband $16,218.33 as an equalization of assets.

The court below set Husband's child support obligation at $980.00 per month. The court set the child support amount in accordance with the provisions of the Tennessee Child Support Guidelines. In so doing, the court based its determination of Husband's income on his 1999 Federal Income Tax Return, rather than on income amounts shown on 1998 and 2000 pay vouchers. The court also awarded Wife 9.76% of Husband's U.S. Navy Reserve disposable retired pay (military retirement).

*Issues*

Wife/Appellant presents the following issues for our review:

(1) Did the trial court err in setting child support at $980.00 per month rather than at $1,678.00 per month pursuant to the child support guidelines?

(2) Did the trial court err in classification and/or division of the following property:

(a) [Real property in Youngstown, Ohio], and Wife's 1993 Saturn automobile acquired post-separation by Wife?

(b) Award to husband of $16,218.33 as an "equalization of assets"?

(c) Division of marital component of Husband's military retirement?

(3) Did trial court err in certain findings of fact contained in Item 22 of the final divorce decree when the preponderance of evidence does not support those findings?

*Standard of Review*

---

[1] The classification and division of this property and these accounts are not raised as issues on appeal here.

This Court's review of the trial court's findings of fact is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d). *See Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. There is no presumption of correctness with regard to the trial court's legal conclusions, however. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). The interpretation and application of statutes and regulations such as the Child Support Guidelines present questions of law which this Court reviews *de novo* with no presumption of correctness. *Hobbs v. Hobbs*, 27 S.W.3d 900, 903 (Tenn. 2000).

### *Determination of Child Support*

Wife contends that the court below erred by basing its determination of Husband's income on Husband's 1999 Federal Income Tax Return, rather than on Husband's pay vouchers for the first eight months of 1998 and 2000. She submits that the pay vouchers more accurately reflect Husband's income for the purposes of determining child support. We agree.

The Tennessee Child Support Guidelines ("the Guidelines") employ a mathematical formula to calculate the amount of child support to be awarded by the court. *See* Tenn. Comp. R. & Regs. ch. 1240-2-4; *Hobbs*, 27 S.W.3d at 902. Under the Guidelines, child support is based on a flat percentage of the obligor's net income. Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(2). In determining the child support award, the court first must compute the obligor parent's gross income. *Hobbs*, 27 S.W.3d at 902. Gross income under the guidelines is broadly defined as "all income from any source (before taxes and other deductions), whether earned or unearned . . . ." Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a). Income which may be excluded from this definition is limited to that excepted by the guidelines themselves. *Hobbs*, 27 S.W.3d at 902 n.2; *see* Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(c). The Internal Revenue Code ("I.R.C.") also defines income broadly, but then provides exemptions for income that is not subject to tax. *See Hobbs*, 27 S.W.3d at 902 n.2. The exceptions enumerated in the Guidelines and those provided by the I.R.C. are not in every instance the same. *Id.* For example, the I.R.C. excludes workers' compensation benefits from gross income. *Id.* (*citing* I.R.C. § 104(a)(1)). The Child Support Guidelines, however, make no exception for workers' compensation benefits. *Id.* (*citing* Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(c)). Under the Guidelines, "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc., should be averaged and added to the obligor's fixed salary" in computing gross income. Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(b). After determining the obligor's gross income, the court must calculate his net income. Net income is calculated by subtracting the obligor's FICA tax, income tax, and child support ordered pursuant to a previous order from gross income. *See* Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(4). For one child, child support is then set at 21% of the obligor's net income. Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(5).

Although the Guidelines present a straightforward formula, the calculation of gross income is more difficult where, as here, it includes variable income. The Guidelines provide that variable income should be averaged and added to the obligor's fixed income, but it does not prescribe how it should be averaged. *Gore v. Gore*, No. M2000-02412-COA-R3-CV, 2001 WL 1660827, at *8

(Tenn. Ct. App. Dec. 28, 2001). The most appropriate method of determining variable income such that an obligor's income may be determined as accurately as possible is done on a case-by-case basis. *See id.* In general, courts have tended to average variable income over as long a time period as circumstances permit. *See id.*

In the present case, the court based its determination of Husband's income on Husband's 1999 Federal tax return, rather than on amounts reflected in his August 1998 and August 2000 pay vouchers. Husband argues that the gross income reported on his tax return is a more accurate reflection of his income than the pay vouchers. We disagree. Although income tax returns can be used in some circumstances to reflect an obligor's income (*see Fillmore v. Fillmore*, No. M1999-00714-COA-R3-CV, 2000 WL 1294314, at *6 (Tenn. Ct. App. Sept. 14, 2000) (*no perm. app. filed*)), given the significant amount of variable and incentive-based income reflected in Husband's pay vouchers, we believe in this case Husband's income is most accurately reflected by the pay vouchers. We therefore remand this cause for a determination of child support based on Husband's income as reflected in the pay vouchers. The trial court may, in its discretion, consider additional evidence regarding Husband's FICA and income tax liability in determining what constitutes net income for the purposes of fixing child support in accordance with the Guidelines.

### *Classification and Distribution of Property*

The court below ordered Wife to pay $16,218.33 to Husband as an "equalization of assets." This award was based on a finding that the Wife received $385,536.32 in assets from the division of marital property, while Husband received $353,099.66. The court split the difference and awarded the equalization of assets in order to "achieve parity" between the parties. At oral argument, counsel for both Husband and Wife agree that neither understands just how the court arrived at this figure. Wife submits, however, that the discrepancy results from the court's erroneous classification of the Ohio real property and her 1993 Saturn as marital property.

Marital property is defined by the legislature as:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . .
    (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.
    (C) "Marital property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the

following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

Tenn. Code Ann. § 36-4-121(b) (2001).

Separate property is defined as:

(A) All real and personal property owned by a spouse before marriage;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2) (2001).

Since the Ohio real property and Wife's Saturn were purchased during the marriage with assets from marital property, they are properly characterized as marital property. However, the court found the total value of this property to be approximately $15,000. Thus an equalization of assets would amount to $7,500. We note, furthermore, that when the parties sold the marital residence in Tennessee, each received $12,800. It is not clear to us from the court's order whether the amount received by Husband was also considered marital property, and therefore calculated into the division of assets.

When dividing marital assets, courts are required to divide property equitably. *See Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn 1988). An equitable division of property does not require that the property be divided equally, penny for penny. *Id.* After reviewing the entire record in this case, we are satisfied that the parties' marital property was equitably divided, and that no equalization of assets was necessary to achieve parity. Husband retained several accounts as separate property, financial accounts established during the marriage were equally divided between the parties, and the proceeds from the sale of the marital home were equally divided at the time of sale. On the whole, an equitable division was achieved. We therefore vacate the award of $16,218.33 which Wife was ordered to pay to Husband.

***Division of Military Retirement Pay***

Wife submits that the court erred in awarding her 9.76% of Husband's military retirement pay, and argues that she is entitled to 22.5% of this amount. Wife asserts that the court improperly admitted evidence that Husband's retirement pay is based on points, rather than on years of service, in determining the amount of pay that is marital property. She argues that documents provided by Quadro Services regarding Husband's retirement benefits are hearsay, and that if this evidence is excluded, the only other proof in the record available to make this determination is Wife's calculation, which is based on time served rather than on points.

We decline to reach the issue of whether the Quadro documents were properly admitted into evidence because we find ample evidence in the record to support the court's determination of this award notwithstanding the documents. Any error by the trial court regarding admission of these documents would therefore be harmless. Husband's testimony regarding his military service and his retirement benefits suffice as proof that his retirement pay is based on points rather than on years served. We further note that no objection to Husband's testimony was made by Wife at trial. The issue thus becomes one of witness credibility. The factual findings of the trial court which rest on determinations of credibility are accorded great weight. *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996). Absent clear and convincing evidence to the contrary, a trial judge's assessment of the credibility of a witness will not be reevaluated by this Court. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). The division of Husband's military retirement pay is affirmed.

### *Findings of Fact*

Wife contends that the court below erred in making several findings of fact in paragraph 22 of the divorce decree because such findings are not supported by a preponderance of the evidence. We note that these findings are made in the context of determining an award of alimony, a determination which Wife has not appealed. We therefore find appeal of these findings to be without merit and decline to address the issue.

### *Conclusion*

In light of the foregoing, we remand this cause for a determination of child support based on Husband's income as reflected in the 1998 and 2000 pay vouchers, vacate that part of the distribution of marital property awarding $16,218.33 to Husband, and affirm the division of Husband's military retirement pay. Costs of this appeal are taxed one-half to the appellant, Stacy Molter Turney, and her surety, and one-half to the appellee, Ronald Ross Turney, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE