IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief June 6, 2006

## ANNESIA W. JARRETT v. ERIC D. CROSS

**Direct Appeal from the Chancery Court for Madison County**
**No. 53972      James F. Butler, Chancellor**

**No. W2005-00979-COA-R3-CV - Filed September 7, 2006**

This is a child support modification case. The trial court determined Father was capable of earning $30,000 per year. Mother appeals, contending Father's life-style evidences a greater income. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Stephen L. Hale, Bolivar, Tennessee, for the appellant, Annesia W. Jarrett.

Angela J. Hopson, Jackson, Tennessee, for the appellee, Eric D. Cross.

**MEMORANDUM OPINION**[1]

The current round in this on-going child support dispute arises from Mother's petition for contempt for failure to pay child support filed in April 2004, and Father's cross-petition to modify child custody. The eldest of the parties' four children had reached the age of majority when the 2004 petitions were filed, and the parties agreed that Father would assume custody of their son, Darius. Father does not dispute that he does not spend any time with the parties remaining two minor children. Mother requested visitation time with Darius after the change of custody. Thus, the

[1]**RULE 10. MEMORANDUM OPINION**

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

proceedings required a resetting of child support. The issues raised by Mother for our review are whether the trial court erred by determining Father is capable of earning only $30,000 per year for the purposes of setting Father's child support obligation and by ordering Father to pay stipulated child support arrears of $20,578, plus 12% interest, at the rate of $150.00 per month.[2]

We review the trial court's findings of fact *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Our review of the trial court's conclusions on matters of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000).

Appellee Eric D. Cross ("Father") and Appellant Annesia W. Jarrett ("Mother") were divorced in June 1998. Mother was awarded custody of the four children born of the marriage. Father was ordered to pay child support to the clerk of the court in the amount of $480.00 per month, plus clerk's fees of five percent. In August 1998, Mother filed a petition for contempt for failure to pay child support in the Chancery Court of Madison County. The matter was heard on August 24, 1998, and Father was found to be in contempt and ordered to pay outstanding arrears and monthly child support in the amount of $420.00. In 1999, Mother petitioned for a writ of attachment. In June 1999, the trial court entered a consent order requiring Father to pay arrears and continuing child support at $420.00 per month by income assignment.

Father testified by deposition that during this period he was selling illegal drugs. In 1997, Father was arrested for selling marijuana. While released on bond pending trial, in 1999 Father was arrested on Federal charges of cocaine and crack cocaine distribution. In 2000, Father pled guilty to three counts of distribution of cocaine and crack cocaine and was sentenced to 72 months incarceration in the federal detention center in Memphis. Beginning 2002, Father was incarcerated at a drug rehabilitation center in North Carolina. Father was released from incarceration in May 2003 and entered a halfway house in Memphis.

In the meantime, Father married his current wife (Ms. Cross). Father's and Ms. Cross's testimony varies regarding when the marriage occurred, but they appeared to have been married while Father was incarcerated, in either 2000 or 2001 or 2002. At the time of her marriage to Father, Ms. Cross was employed as an administrative secretary at a salary of $20,000 per year. While at the halfway house in Memphis, Father began working "little odd jobs" for a Mr. Lee Bishop (Mr. Bishop), who also employed Father's step father in-law. Father was released from the halfway house in or about November 2003. Father did not file a petition to modify child support. He currently is released on probation.

Upon release from the halfway house in November 2003, Father moved into Ms. Cross's home on Overhill in Jackson. Apparently, Ms. Cross did not own the home at the time of the marriage, but purchased it in 2002. He continued to work for Mr. Bishop, earning approximately

---

[2]Father does not appeal the trial court's finding with respect to his earning capacity.

$800 to $1,200 per month. Father testified that his employment with Mr. Bishop is his only source of income. Ms. Cross sold the Overhill home, and in March 2003, Father and Ms. Cross purchased a home on Windemere Circle in Jackson for approximately $300,000. Father testified that he is on the deed to the Windemere Circle property. Additionally, Father and Ms. Cross own four rental properties financed by B&H Investments. Father testified that the rental income from those properties, which are in various states of repair/rehabilitation, is approximately $1,500 per month. In May 2003, following the tornado in Jackson, Ms. Cross began a home repair service. According to Ms. Cross, Father "helped out" in this business, but was not an employee. In August 2004, Ms. Cross also began selling real estate.

At the trial of this matter in February 2005, Ms. Cross testified to earning $20,000 per year as a secretary and approximately $7,000 in 2004 selling real estate. She testified that she anticipated experiencing a loss with the home repair business. Father testified to netting approximately $15,000 in 2004 doing home repair, for which he is generally paid in cash. Thus, inclusive of approximately $1500 per month in rental income, Father's annual income is approximately $33,000 per year and Ms. Cross's annual income is approximately $27,000 per year.

In addition to purchasing a $300,000 home in 2003, Ms. Cross purchased a new Cadillac Escalade in 2003 and also owns a 1996 Cadillac STS. Ms. Cross also has savings and checking accounts with a total balance of approximately $38,000. Ms. Cross testified that the mortgage on the Windemere home and all the household bills are paid from her income. The Cross's monthly household payments for their home and Ms. Cross's two cars is $3,338.

We agree with Mother that Father's life style and the Cross's purchase of the Windemere home and Cadillacs belie the income to which they testified. However, there is no evidence in the record which preponderates against the trial court's determination that Father earns approximately $30,000 per year. Further, although Father's counsel stated that she determined Father's income to be $43,000 per year, Father disputed that estimate.

We are not insensitive to Mother's position in this case. However, as Mother noted in her brief to this Court, we are in no better position to determine Father's income than the trial court was when this matter was heard. As the trial court noted, the Cross's "expenses seem to far outstrip the income and their lifestyle also seems to outstrip the available income they have testified to." There is nothing in the record, however, to indicate to whom or what any supposed additional income is attributable. Further, financing information pertaining to the Windemere property is not in the record. Although Father is on the deed to the Windemere property and the rental properties, there is nothing in the record to refute Ms. Cross's testimony that she earns the income with which the majority of the household bills, including the mortgage, are paid. There is a paucity of evidence in this case, and the evidence available in the record does not preponderate against the trial court's determination. Accordingly, we affirm the trial court's determination that Father is capable of earning $30,000 per year.

We next turn to whether the trial court erred in ordering Father to pay child support arrears at a rate of $150 per month. In light of our deferential standard of review of this issue, and in consideration of the foregoing, we affirm the monthly payment amount.

The judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellant, Annesia W. Jarrett, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE