IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 27, 2002 Session

## STANLEY DAVID ALFORD v. PAMELA WARD ALFORD

**Appeal from the Domestic Relations Court for Hamblen County**
**No. 4940     Joyce M. Ward, Judge**

### FILED OCTOBER 22, 2002

### No. E2001-02361-COA-R3-CV

In this divorce case, the trial court dissolved a marriage of 21 years and divided the parties' marital property. Stanley David Alford ("Husband") appeals, arguing that the division of property was not equitable and that the trial court erred in requiring him to pay the post-separation debts of his wife, Pamela Ward Alford ("Wife"). By way of a separate issue, Wife contends that the trial court erred in refusing to award retroactive child support. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Domestic Relations Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Janice H. Snider, Morristown, Tennessee, for the appellant, Stanley David Alford.

Douglas R. Beier, Morristown, Tennessee, for the appellee, Pamela Ward Alford.

**OPINION**

I. *Background*

Husband and Wife were married on November 2, 1979. They have one child. When the most recent divorce complaint was filed, the child already had reached the age of majority.

The parties separated in 1989. At the time of their separation, they lived in Georgia. Wife subsequently moved to Tennessee with the parties' nine-year-old daughter. Husband remained in Georgia until he sold the parties' home in 1992, at which time he also moved to Tennessee. Since the separation, Wife has been employed in the sales department of Tuff Torq Corporation, and Husband has worked as a construction company supervisor.

One year after their separation, Wife filed for divorce. However, she subsequently dismissed her complaint, ostensibly due to the parties' agreement that they did not want their daughter to be the product of a divorce. Thereafter, the parties continued to live apart, remaining married in name only. Shortly after the separation, Husband began paying Wife $200 per month toward the support of their child.[1]

The parties continued this living arrangement for the next ten years. In July, 1999, Husband filed for divorce, citing irreconcilable differences, or in the alternative, inappropriate marital conduct. This divorce case was heard in January, 2001, and a final judgment was entered April 20, 2001, granting Husband a divorce on the ground of inappropriate marital conduct, "due to Wife's deception in joint financial matters."[2] The trial court awarded each party the household goods and furnishings in the party's possession. Each party also received an automobile.[3] The marital debts of Wife, which totaled $12,640 at the time of the divorce hearing, were to be paid from marital assets. The trial court ordered that the net marital estate of the parties, totaling approximately $111,373,[4] was to be "divided in such a manner as to result in equal division." The court denied Wife's motion for alimony and retroactive child support.

Upon Husband's motion to alter or amend, the trial court modified its judgment in which it had required that Wife's marital debts be paid from the marital assets. It decreed, instead, that Husband would be required to pay Wife's marital debts of $9,000.[5] As for the marital assets of the parties, the trial court ordered that, once the marital debts were paid, the parties were to add the values of their separate 401(k)s and investment accounts "as of the actual date of transfer, and

---

[1]Husband has a child from a previous marriage, and, pursuant to a court order, had been paying his first wife child support of $200 per month. That child reached the age of majority around the time the parties in the instant case separated. Thereafter, Husband began paying the $200 per month to Wife.

[2]The proof at trial revealed that Wife had obtained a second mortgage on the parties' Georgia home, without the knowledge or consent of Husband. In addition, Wife had obtained credit cards in Husband's name, had incurred substantial credit card debt, and had defaulted on these obligations.

[3]The trial court ordered that Wife was to be responsible for the encumbrances on her automobile.

[4]The funds in Wife's checking and savings accounts, as well as in her 401(k), net of all debts, totaled approximately $22,831. Husband's checking and savings accounts, along with his investment accounts, were worth approximately $88,542.

[5]Apparently, Wife sold some real property in the interim between the trial and the hearing on the motion to alter or amend, and used the proceeds to make payments on her debts. The supplemental memorandum opinion of the trial court reflects that Wife's liabilities totaled $9,000, the amount that Husband was ordered to pay.

transfer sufficient shares from Husband to Wife to reflect equal value to both parties."[6]  From this order, Husband appeals.

## II. *Standard of Review*

Our review of this non-jury case is *de novo* upon the record with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d).  The trial court's conclusions of law are also reviewed *de novo*, but they are not accorded the same deference.  **Brumit v. Brumit**, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

## III. *Property Division*

Husband first argues that the trial court erred in its division of the parties' marital property. We disagree.

Property may be equitably divided and distributed between the parties once it is properly classified as marital. *See* Tenn. Code Ann. § 36-4-121(a)(1) (2001). "Trial courts have wide latitude in fashioning an equitable division of marital property."  **Brown v. Brown**, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).  Such a division is to be effected upon consideration of the statutory factors found in Tenn. Code Ann. § 36-4-121(c) (2001).

"[A]n equitable property division is not *necessarily* an equal one.  It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case."  **Batson v. Batson**, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988) (emphasis added).  Appellate courts are to defer to a trial court's division of marital property unless the trial court's decision is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence.  **Brown**, 913 S.W.2d at 168.

Tenn. Code Ann. § 36-4-121 provides, in pertinent part, as follows:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

---

[6]The trial court's supplemental memorandum opinion indicates that Wife's 401(k) retirement account, assuming payment of the debt against it, was worth $32,244, while Husband's 401(k) and investment accounts were worth $82,220. These figures show the effect of stock market fluctuations between the final hearing and the hearing on the motion to alter or amend.

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

* * *

(8) The economic circumstances of each party at the time the division of property is to become effective;

* * *

(11) Such other factors as are necessary to consider the equities between the parties.

In the instant case, the trial court equally divided the marital estate. The first of the relevant factors addresses the "duration of the marriage." This was a marriage of over 21 years. We recognize that the parties were separated for over half of the marriage; but as the trial court succinctly stated,

> [the parties] cannot be both married and divorced. Courts should not concern themselves with the type of living arrangements chosen by adult parties to the union.

*See* Tenn. Code Ann. § 36-4-121(c)(1). This *was* a 21-year marriage.

Husband clearly has, and will continue to have, far greater earning capacity than Wife. At the time of trial, Husband was employed by Horizon Construction, where he was earning over $70,000 per year. By contrast, Wife's position with Tuff Torq Corporation earns her approximately $31,000 per year. Further, Wife obviously has greater financial needs and liabilities than Husband. While there is no question from the proof in the record that Wife has done a poor job of managing her finances, she nonetheless has borne the burden of raising the parties' daughter almost entirely on her own income. In its supplemental memorandum opinion, the trial court stated:

Prior to the separation, Wife committed misconduct in relation to the parties' finances. She also wrongfully obtained credit, in Husband's name, during the separation. She has lived beyond her income. Her credit card debts were incurred to maintain living expenses and payment obligations. She once invested in real property and was required to sell it to pay debts. In her favor, however, she reared the minor child on less than one-half of Husband's income and accepted token child support, which greatly benefited Husband.

*See* Tenn. Code Ann. § 36-4-121(c)(2), (4), (8) & (11).

The trial court found that Husband had earned over $555,580 during the parties' separation. If the parties had divorced, the court reasoned, Husband's child support obligation for the period of the separation would have amounted to $59,640. Instead, Wife raised the child on her income, assisted by Husband's $200 per month payments. While Husband presented evidence of other contributions to the support of the parties' daughter during the period of separation and Wife admitted Husband had always acquiesced to any of her requests for financial assistance, the fact that Wife was primarily responsible for the financial obligations incumbent upon raising a child greatly contributed to Husband's ability to earn and invest funds during the separation. *See* Tenn. Code Ann. § 36-4-121(c)(3) & (5).

Based upon this analysis, we cannot say that the trial court's equal division of marital property in this case is unsupported by the preponderance of the evidence, and we accordingly find no error in said division. Certainly, the record does not reflect that the trial court abused its discretion.

## IV. *Division of Debts*

Husband next argues that the trial court erred in requiring him to pay the debts Wife incurred after the parties separated. Again, we disagree.

Marital debts are subject to equitable division in the same manner as marital property. *See* **Cutsinger v. Cutsinger**, 917 S.W.2d 238, 243 (Tenn. Ct. App. 1995); **Mondelli v. Howard**, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). "Marital debts are those debts incurred during the marriage for the joint benefit of the parties, ... or those directly traceable to the acquisition of marital property." **Mondelli**, 780 S.W.2d at 773 (citations omitted). In dividing marital debts, courts should consider the following factors: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt. **Id.**

In the instant case, the trial court ordered Husband to pay $9,000 in debts incurred by Wife. There is no question that these debts were properly classified by the trial court as marital debt. The fact that these debts were acquired after the parties separated does not remove them from the category of marital debt. While Wife's testimony as to the purpose of the debts was somewhat

vague, the trial court found that "[h]er credit card debts were incurred to maintain living expenses and payment obligations." In terms of which party benefitted from incurring these debts, the court stated that Wife "reared the minor child on less than one-half of Husband's income and accepted token child support, which greatly benefited Husband." Finally, based upon the great disparity in the parties' income, Husband is clearly in a better position to repay these debts. We do not find that the evidence preponderates against a finding that Husband should be burdened with the debts incurred by Wife during the marriage.

## V. *Child Support*

By way of a separate issue, Wife argues that the trial court erred in refusing to award her retroactive child support. We cannot agree with this contention.

The trial court found that, during the period of the parties' separation, Husband paid Wife approximately $20,000 in support for their child. If the parties had divorced at the time of their initial separation, Husband would have been required to pay almost $60,000 under the Child Support Guidelines during this 11-year period. On appeal, Wife argues that she is entitled to this $40,000 difference and cites the case of ***Berryhill v. Rhodes***, 21 S.W.3d 188 (Tenn. 2000), in support of her position. However, Wife's reliance on the ***Berryhill*** case is misplaced. ***Berryhill*** stands for the proposition that, in paternity cases, private agreements for the support of children cannot be used to circumvent statutorily mandated child support obligations. ***Id.*** at 192. The court in ***Berryhill*** went on to discuss retroactive child support in such paternity cases. ***Id.*** at 192-93. While Wife contends that the language in the case indicates that the court "intended its application more broadly than just paternity cases," our careful review of the case reveals no such indication, and, accordingly, we find that the ***Berryhill*** case has no application to the instant case. There is simply nothing in that case to indicate that the Supreme Court intended for the principles announced there to apply to a married – but separated – couple.

If Wife had believed she was not receiving ample child support from Husband, there was a remedy available to her. Tenn. Code Ann. § 37-1-104(d)(1)(A) (2001) provides that "[t]he juvenile court has concurrent jurisdiction and statewide jurisdiction with other courts having the jurisdiction to order support for minor children and shall have statewide jurisdiction over the parties involved in the case." In addition, "[i]n any case in which the court has exclusive or concurrent jurisdiction to order the payment of child support, the court may issue a child support order when requested by a party." Tenn. Code Ann. § 37-1-104(d)(2) (2001). Therefore, Wife could have, at any time during the parties' separation, petitioned the juvenile court in her jurisdiction to order Husband to pay additional support if she had felt that she was not receiving enough support for her daughter.

However, even if the denial of Wife's motion for retroactive child support was error – and we do not believe it was – Wife cannot be heard to complain about an error to which she contributed. At trial, counsel for Wife, in presenting the argument for retroactive child support, stated the following:

It's a funny thing, Your Honor, the facts of this case, the amount of underpayment of child support that [Wife has] calculated is about forty thousand dollars. Now, where the assets are concerned, with [Husband's] accumulation of the assets, if the Court were to look right down the middle and divide them, the difference would be about forty thousand dollars. So, it comes out, even though the Court is looking at it this way as opposed to that way, it comes out about the same way.... [Husband]'s got a hundred – he's got about eighty thousand dollars more in assets that are marital assets than [Wife] has currently. If you marshal them altogether and then split the difference, [Husband would] owe [Wife] forty thousand dollars, which is exactly what [Wife has] calculated [Husband] underpaid in child support during those same years. I don't know how the Court wants to look at it, and I know that a lot of Courts say, I'm not going to get into the accounting of the marriage. Of course, now, [the parties are] not married and living together, but [the parties] are married, but separate. And sometimes Courts don't even want to get into the accounting of that, but after [the parties have] been separated for now almost 12 years, you have to consider the equities of what went on in those 12 years. I mean, [Husband has] got a lot of assets, and [Wife doesn't] have a lot of assets, and my whole argument there is, [Wife doesn't] have a lot of assets because [she was] underpaid in child support and bearing the responsibilities for that child.

We construe these statements to mean that Wife wanted $40,000, regardless of whether the trial court awarded that amount to her as retroactive child support or in the division of marital property. Essentially, Wife asked the court to use its discretion in determining how to award her these funds. While the record does not reflect the precise amount that will be required, under the court's modified final judgment of divorce, to equalize the division of marital assets, it is clear that some amount in excess of $20,000 was to be paid to Wife to supplement her individually-held assets. When this equalization is coupled with the trial court's decree requiring Husband to pay Wife's debts of some $9,000, it appears that the trial court decided to address the disparity-of-child support issue through its division of the net marital assets. This will probably not amount to Wife's hoped-for $40,000, but it should be a significant sum. In effect, the trial court chose one of the two options suggested by Wife. Now it appears that Wife wants to have her proverbial cake and eat it, too. However, no relief will be granted to one who is "responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a).

Furthermore, "a party in the Appellate Court will not be permitted or heard to assume a position contrary to and inconsistent with the position he [or she] took in the Trial Court." *Clement v. Nichols*, 186 Tenn. 235, 237, 209 S.W.2d 23, 24 (1948). At trial, Wife essentially presented an "either/or" argument to the court, and now Wife is asserting that she is entitled to both remedies.

These positions are inconsistent, and "[i]t is the rule in this jurisdiction that a plaintiff cannot take a position on appeal inconsistent with that taken in the trial of the case." ***Daniels v. Combustion Eng'g, Inc.***, 583 S.W.2d 768, 770 (Tenn. Ct. App. 1978). Accordingly, we find Wife's asserted "error" to be without merit.

## VI. *Conclusion*

The judgment of the trial court is affirmed. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Stanley David Alford.

_____
CHARLES D. SUSANO, JR., JUDGE