IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief May 4, 2006

**IN THE MATTER OF: Z.A.W.**

**Direct Appeal from the Juvenile Court for Madison County**
**No. 33-29,056 and 41-37,291     Larry J. Logan, Judge by Interchange**

———————

**No. W2005-01956-COA-R3-JV - Filed June 12, 2006**

———————

The trial court denied continuance, awarded custody of the parties' child to Father, and refused to grant Mother visitation until she completed a psychological evaluation and petitioned the court. Mother appeals, asserting the trial court erred by denying a continuance and by refusing to award her visitation rights.  We affirm the denial of a continuance, but reverse the denial of visitation and remand to the trial court to set visitation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in part;**
**Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Princess Walker Mirabal, *Pro Se.*

Lanis L. Karnes, Jackson, Tennessee, for the appellee, Rickey L. Coleman.

**OPINION**

The parties to this child custody dispute, Rickey L. Coleman ("Father") and Princess Walker Mirabal ("Mother") are the unmarried parents of a minor child (Z.A.W.) born in September 1999. Mother was eighteen years of age at the time of Z.A.W.'s birth and resided with her parents in Seoul, South Korea, where her father, James Walker was stationed with the United States Army. Mother did not list Father on Z.A.W.'s birth certificate.

In February 2000, the Juvenile Court of Madison County entered a consent order between Mother and her parents, James Walker (Mr. Walker) and Debbie Walker (Ms. Walker; collectively, "the Walkers"), granting the Walkers full custody of Z.A.W.  In the petition for consent order, Mother and the Walkers asserted that they were residents of Tennessee living in South Korea, that Mother desired to enlist in the United States Army, and that Mother was granting custody of Z.A.W. to the Walkers to enable her to enlist in military service.  The issue of child support was waived.

Mother's visitation with Z.A.W. was to be as reasonably agreed. Father submits he did not know he was the father of Z.A.W., was not given notice of the custody proceedings, and did not know Mother had given custody of Z.A.W. to the Walkers.[1]

In May 2001 and January 2002, Mother petitioned the court to return custody of Z.A.W. to her, asserting a material change of circumstances existed where she had completed training, had a career, and had established a home in Virginia. In the meantime, the Walkers petitioned the Circuit Court for Leon County, Florida, to assess child support against Father. Father acknowledged paternity and, following a hearing on March 26, 2002, the court assessed retroactive child support of $172 and set prospective child support at $151 per month.

On June 24, 2003, Father filed a petition for temporary custody of Z.A.W. In his petition, Father asserted Z.A.W. was in the temporary legal custody of the Walkers. In July 2003, the trial court ordered a CASA home study on Father, Mother, and the Walkers, and appointed a guardian ad litem. On June 2004, the trial court awarded Father visitation with Z.A.W. at Father's residence in Florida. On August 3, 2004, the trial court heard the parties' petitions for custody and held that Z.A.W. would remain with the Walkers for the 2004-05 school year. The court awarded Mother and Father visitation rights, and docketed the matter for further review at the end of the school year. On July 22, 2005, Mother again filed a petition for custody of Z.A.W..

A hearing on Mother's and Father's petitions was set for August 8, 2005, at 9:00AM. The Walkers moved for a continuance on August 5, and renewed their motion on the morning of the August 8 hearing. The trial court denied the motion. Mother acted *pro se* and arrived late to the hearing on the morning of August 8. At the outset of the hearing, the trial court advised Mother that she was at a "severe disadvantage" where she was unrepresented and Father and the Walkers were represented by counsel. During the course of the proceedings, the guardian ad litem testified that Father presented no threat of substantial harm to Z.A.W. and that, in the guardian's opinion, the court could not, therefore, deprive Father of custody where Z.A.W. was in the temporary custody of a non-parent. The Walkers then indicated that they would not contest Mother's petition for custody. The hearing accordingly proceeded as a custody dispute between Mother and Father based on the best interest of the child.

Following a lunch recess, Mother failed to return to the trial court at 2:00 as ordered. However, Susan Hays (Ms. Hays), an attorney, appeared at the Walkers' request to move for a continuance on Mother's behalf. Ms. Hays stated that Ms. Walker had contacted her to ask her to move the court for a continuance because Mother had gone to her hotel room to get a laptop computer. When asked by the trial court whether she represented Mother, Ms. Hays replied:

> I told her (Ms. Walker) I was willing to come down here only to ask for a
> continuance, and I understand that this has been going (sic) and this is an old case

---

[1]We find Father's assertion that he did not know he was the father of Z.A.W. to be somewhat disingenuous in light of his mother's testimony in the trial court.

and you've been brought in especially for this hearing.[2]  I do understand that, but I felt that at some point you need an attorney just to say that.

The trial court rejected the motion, but noted that the case "ha[d] taken more turns than the Indy 500."  Ms. Hays departed and the hearing proceeded in Mother's absence.  Mother returned to the courtroom at 2:45.  Upon her return, Mother apologized to the court and stated, "I obtained a lawyer most recently because I felt like I was losing complete ground in the case. . . ."  No attorney appeared to represent Mother, however, and Mother did not move the court for a continuance in order to provide an attorney time to review and prepare her case.  Mother stated only that she had not yet been able to provide the court with documentation regarding her home.  The trial court received Mother's documentation into evidence.  Mother offered no reason for her late arrival other than stating that she "had left something back at [her] hotel that [she] had to have."

The trial court entered final judgment on the matter on August 8, 2005.  In its order, the trial court accepted the Walkers' renunciation of custody and dismissed them as parties.  The trial court awarded custody of Z.A.W. to Father.  The trial court awarded Mother no visitation, stating:

> Visitation by the Mother . . .  is reserved until she obtains a full psychological evaluation by an appropriate mental health professional, obtains full parenting training by a certified parenting training program, and petitions this court and presents the same to this court, at which time the court will consider her request.

Mother filed a timely notice of appeal to this Court.  We affirm in part, reverse in part, and remand to the trial court to set visitation.

### Issues Presented

Mother raises two issue for our review:

(1)    Whether the trial court abused its discretion when it denied the motions for continuance and resumed the trial in this matter in Mother's absence even though Mother was a *pro se* litigant in a child custody case and the court was advised that Mother was on her way back to court?

(2)    Whether the trial court erred in granting custody of the minor child to Father and denying Mother visitation with the minor child when an expert witness recommended visitation for Mother, when Father testified that he and Mother could cooperate in accordance with the recommendations, when the hearing was continued in Mother's absence, and when no clear and definite evidence existed that permitting visitation with Mother would jeopardize the child?

---

[2]Madison County Juvenile Court Judge Christy Little recused herself from the proceedings on June 14, 2005. The matter subsequently was heard by the Hon. Larry Logan by interchange.

### *Standard of Review*

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181(Tenn. 1995). We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). However, no presumption of correctness attaches to a trial court's conclusions on issues of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d). The trial court's determination on whether to grant a motion for continuance is likewise reviewed under an abuse of discretion standard. *In re C.T.S.*, 156 S.W.3d 18, 22 (Tenn. Ct. App. 2004).

### *Analysis*

We begin our analysis by noting that, in his June 2003 petition, Father asserted Z.A.W. was in the temporary custody of the Walkers. However, the February 2000 consent order entered by the trial court vested full custody of Z.A.W. with the Walkers. We also note that Father's June 2003 petition was a petition for temporary rather than full custody. Father filed no formal amended petition. In his August 8, 2005, Memorandum, however, Father stated he was "requesting primary parenting (physical custody) and legal custody of his son." Additionally, the transcript of the proceedings below, including statements of the Walkers' legal counsel, demonstrate that all parties were aware that Father sought full custody of Z.A.W. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tenn. R. Civ. P. 15.02. Adjudication of the issue of full custody worked no surprise on the parties and was tried by consent in this matter.

### *The Motion for Continuance*

We begin our analysis of this issue by noting that Mother herself did not move for a continuance in the trial court. Rather, Ms. Hays appeared to move for a continuance in light of Mother's absence. Ms. Hays, however, had been neither retained nor contacted by Mother. Ms. Hays stated that she had been contacted by Ms. Walker, a party formerly adverse to Mother and previously dismissed by the trial court. Further, Ms. Hays made it clear that she appeared before the court only to seek a continuance and that she had not been retained to represent Mother. Ms. Hays offered no reason for Mother's absence other than stating that Mother had gone her hotel for a laptop computer. Ms. Hays also offered no explanation for why Mother felt it necessary to have the computer. Additionally, as noted above, upon returning to the court forty-five minutes late, Mother offered no reason for her late arrival other than stating she had needed something from her hotel room. She did not move the court for a continuance in order to allow her to seek counsel.

We note that Mother's action below began as a petition to change custody from the Walkers to herself and ended as an initial custody dispute between Mother and Father, Z.A.W.'s natural parents. However, in either case, Mother was required to demonstrate that awarding her custody of Z.A.W. was in Z.A.W.'s best interest. *See Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)(holding: (1) a natural parent who seeks to modify a custody order granting custody to a non-

parent must demonstrate a material change of circumstance such that a change in custody is in the child's best interest; (2) the trial court must utilize the factors enumerated in Tennessee Code Annotated 36-6-106, the factors applicable in a custody determination in a suit for divorce, in its best interest analysis). Therefore, the shift in the course of proceedings placed no additional burden on Mother such that justice demanded a continuance.

Additionally, Mother's petition to change custody in this case was Mother's third petition, and she was advised by the trial court that she would be well-served to seek counsel. At no point in the proceedings did Mother request a continuance in order to allow her to seek counsel based on the trial court's advice. Mother's argument, as we perceive it, is that the trial court erred by resuming court on time when Mother was late in arriving after the lunch recess for no excusable reason. Assuming Mother was represented by Ms. Hays for the purpose of the motion to continue, we cannot say the trial court abused its discretion by refusing to grant the motion.

### *Visitation*

Mother additionally argues that the trial court erred by refusing to award her visitation with Z.A.W. This Court recently considered similar orders in *Burlew v. Burlew*, No. W2005-00526-COA-R3-CV, 2006 WL 26361 (Tenn. Ct. App. Jan. 5, 2006)(*no perm. app. filed*) and *In re S.C.H.*, No. M2003- 01382-COA-R3-CV, 2004 WL 2941151 (Tenn. Ct. App. Dec. 20, 2004) *perm. app. denied* (Tenn. May 2, 2005). In those cases, we discussed and reaffirmed the public policy of this state, as expressed by Tennessee Code Annotated § 36-6-301 and reiterated by considerable case law, that the non-custodial parent be awarded visitation reasonably sufficient to maintain the parent-child relationship. *Burlew,* 2006 WL 26361, at *4-5; *In re S.C.H.*, 2004 WL 2941151, at *4-5 (citing *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn.1983)).

The Tennessee Code provides:

After making an award of custody, the court shall, upon request of the non-custodial parent, grant such rights of visitation as will enable the child and the non-custodial parent to maintain a parent-child relationship unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health. In granting any such rights of visitation, the court shall designate in which parent's home each minor child shall reside on given days of the year, including provisions for holidays, birthdays of family members, vacations and other special occasions. If the court finds that the non-custodial parent has physically or emotionally abused the child, the court may require that visitation be supervised or prohibited until such abuse has ceased or until there is no reasonable likelihood that such abuse will recur. The court may not order the department of children's services to provide supervision of visitation pursuant to this section except in cases where the department is the petitioner or intervening petitioner in a case in which the custody or guardianship of a child is at issue.

Tenn. Code Ann. § 36-6-301(2005).

Although the details of custody and visitation with children are generally within the broad discretion of the trial judge acting in the child's best interest, the least restrictive visitation limits are favored in order to encourage the parent-child relationship. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). The best interest of the child is the paramount consideration. *Id.* at 89. Termination of visitation, which has the practical effect of terminating the parent-child relationship, must be supported by specific findings that visitation by the non-custodial parent will result in physical, emotional, or moral harm to the child. *Id.*

In this case, the trial court made no finding that visitation by Mother would result in harm to Z.A.W. Further, the record would support no such finding. We accordingly reverse the trial court's order insofar as it denies visitation to Mother, and remand for the setting of Mother's visitation rights.

### *Child Support*

Although not raised as an issue by the parties, we note that the trial court failed to set child support in this matter. It is the public policy of Tennessee that parents owe a duty of support to their children. *Berryhill v. Rhodes*, 21 S.W.3d 188, 192 (Tenn. 2000). Private agreements that circumvent the child support guidelines contravene that policy. *Id.* An agreement to relieve a parent of his or her obligation of child support, whether private or incorporated into a court decree, is void as against public policy. *Witt v. Witt*, 929 S.W.2d 360, 363 (Tenn. Ct. App. 1996). Even where this Court affirms a judgment of the trial court on the facts, we will reverse on the failure to set child support as a matter of public policy. *Hartman v. Hartman*, No. M2003-00805-COA-R3-CV, 2004 WL 3044910, at * 11 (Tenn. Ct. App. Dec. 30, 2004)(*no perm app. filed*)(Cain, J. concurring)(citing *Berryhill v. Rhodes*, 21 S.W.3d 188 (Tenn. 2000)).

In this case, the record does not demonstrate that Mother and Father privately agreed that the non-custodial parent would not have an obligation of child support. The parties and the trial court failed to address the issue. Upon remand, therefore, we instruct the trial court to set Mother's child support obligation in accordance with the child support guidelines.

### *Holding*

We affirm the trial court's denial of a continuance to Mother. We reverse the trial court's order denying visitation to Mother and remand for the setting of visitation and Mother's child support obligation. Costs of this appeal are taxed one-half to Appellee Rickey L. Coleman and one-half to Appellant Princess Walker Mirabal, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE